SINGER, APPELLANT, *v.* DICKINSON, APPELLEE.

[Cite as *Singer v. Dickinson* (1992), 63 Ohio St.3d 408.]

(No. 90–2012—Submitted November 13, 1991—Decided April 15, 1992.)

*James E. Workman, Jr.,* for appellant.
*Lawrence Dickinson, pro se.*

MOYER, C.J. At issue in this case is the propriety of the juvenile court's decision to allocate to defendant the federal tax dependency exemption for Ryan Singer. Upon review, we conclude that the juvenile court applied the wrong legal standard in awarding the dependency exemption to defendant.

## I

Plaintiff first contends that federal law preempts the juvenile court's authority to allocate the federal tax dependency exemption to the defendant. In view of our prior precedent and the terms of the federal statute in question, we reject plaintiff's contention.

The controlling federal law is found in Section 152(e), Title 26, U.S.Code. In effect since January 1, 1985, that section provides in relevant part as follows:

"Support test in case of child of divorced parents, etc.—

"(1) Custodial parent gets exemption.—Except as otherwise provided in this subsection, if—

"(A) a child * * * receives over half of his support during the calendar year from his parents—

"(i) who are divorced or legally separated under a decree of divorce or separate maintenance,

"(ii) who are separated under a written separation agreement, or

"(iii) who live apart at all times during the last 6 months of the calendar year, and

"(B) such child is in the custody of one or both of his parents for more than one-half of the calendar year,

"such child shall be treated, for purposes of subsection (a), as receiving over half of his support during the calendar year from the parent having custody for a greater portion of the calendar year (hereinafter in this subsection referred to as the 'custodial parent')."

"(2) Exception where custodial parent releases claim to exemption for the year.—A child of parents described in paragraph (1) shall be treated as having received over half of his support during a calendar year from the noncustodial parent if—

"(A) the custodial parent signs a written declaration * * * that such custodial parent will not claim such child as a dependent for any taxable year beginning in such calendar year, and

"(B) the noncustodial parent attaches such written declaration to the noncustodial parent's return for the taxable year beginning during such calendar year.

"For purposes of this subsection, the term 'noncustodial parent' means the parent who is not the custodial parent."

Section 152(e) creates a presumption in favor of the custodial parent. This presumption can be overcome, however, when the custodial parent signs a written declaration surrendering the tax exemption to the noncustodial parent and the noncustodial parent attaches that declaration to his or her federal tax return.

Plaintiff contends that the trial court could not force her to surrender the exemption because the federal statute gives effect only to written declarations that are voluntary. However, plaintiff's voluntariness argument was rejected by this court in *Hughes v. Hughes* (1988), 35 Ohio St.3d 165, 518 N.E.2d 1213, certiorari denied (1988), 488 U.S. 846, 109 S.Ct. 124, 102 L.Ed.2d 97. The *Hughes* court stated that the custodial parent presumption and the written declaration exception were created only "for the administrative convenience of the Internal Revenue Service ['IRS']. * * *" *Id.*, 35 Ohio St.3d at 167, 518 N.E.2d at 1215. By creating an easily applied rule concerning the exemption, Congress insured that the IRS would not become embroiled in costly disputes by parents over who would claim the exemption. The sole concern was "that only one divorced spouse claim and receive the deduction. * * *" *Id.* at 167, 518 N.E.2d at 1216; see, also, *Monterey Cty. v. Cornejo* (1991), 53 Cal.3d 1271, 1279, 283 Cal.Rptr. 405, 410, 812 P.2d 586, 591 ("the statute manifests utter indifference to whether the declaration was signed voluntarily or pursuant to court order"). Given this purpose of administrative convenience, this court recognized, as have a majority of other courts, that Section 152(e) does not limit a state court's authority to allocate the exemption to noncustodial parents. Annotation, State Court's Authority, in Marital or Child Custody Proceeding, to Allocate Federal Income Tax Dependency Exemption for Child to Noncustodial Parent under § 152(e) of the Internal Revenue Code (1990), 77 A.L.R.4th 786, 791.

Plaintiff attempts to apply one passage in *Hughes* in which this court stated that "[w]e cannot * * * force a custodial parent to execute the requisite declaration. * * * " *Id.*, 35 Ohio St.3d at 167, 518 N.E.2d at 1216. Plaintiff's argument is premature, since no "force" has yet been used against her. In fact, the juvenile court erred in her favor by not specifically ordering her to sign a written declaration so that defendant could take advantage of the dependency exemption. When a trial court decides to allocate the federal tax dependency exemption to the noncustodial parent, it must order the custodial parent to "take whatever action is necessary * * * to enable" the noncustodial parent to claim the exemption. See R.C. 3113.21(B)(10), effective April 12, 1990. Without a signed declaration, the IRS will not honor the noncustodial parent's claim of the exemption and the court's allocation will not have the desired effect of maximizing the benefit of the exemption.

We believe plaintiff misreads the *Hughes* passage. In *Hughes*, we meant only that a court could not physically force a defiant custodial parent to sign the written declaration. The *Hughes* court recognized that other forms of coercion, such as an action in contempt, could be used to persuade the defiant parent to comply with an order to sign the declaration. *Id.*, 35 Ohio St.3d at 168, 518 N.E.2d at 1216. We conclude that a trial court has the authority to order the custodial parent to sign the written declaration and to use all of its contempt powers if the parent defies the court's order to sign.

In a final argument, plaintiff attempts to distinguish *Hughes* on the basis that *Hughes* involved divorced parents rather than parents, such as defendant and herself, who have never been married. However, this distinction is unimportant for purposes of federal law. Section 152(e) applies not only to divorced or separated parents, but also to parents "who live apart at all times during the last 6 months of the calendar year * * *." Section 152(e)(1)(A)(iii), Title 26, U.S.Code; Section 1.152–4T, Title 26, C.F.R. Given the inclusion in Section 152(e) of parents who are living apart, there is no reason to distinguish the conclusion in *Hughes* that Section 152(e), Title 26, U.S.Code does not preempt a state court's authority to allocate the federal tax dependency exemption to the noncustodial parent.

## II

Plaintiff essentially contends that the 1979 agreed entry should be considered *res judicata* and not subject to the juvenile court's continuing jurisdiction because the parties agreed that she would retain the exemption after Ryan's fifth birthday.

Plaintiff's argument has some initial appeal because of the characterization of the exemption in *Hughes* as "marital property." Noting that the parties in

this case were never married, plaintiff contends that the trial court had no continuing jurisdiction to award defendant her "property."[1] See *Wolfe v. Wolfe* (1976), 46 Ohio St.2d 399, 75 O.O.2d 474, 350 N.E.2d 413, paragraph one of the syllabus.

We were not faced in *Hughes* with the issue of continuing jurisdiction. For purposes of resolving the federal preemption question, it was irrelevant in *Hughes* whether the exemption was deemed "marital property" or deemed analogous to or part of child support. A subsequent case, *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 528 N.E.2d 180, likewise did not present the issue of continuing jurisdiction. Consequently, we are not bound by any characterization in these cases regarding the nature of the dependency exemption. We hereby modify the *Hughes* syllabus to delete its reference to marital property.

Under present statutes, it is clear that the juvenile court has continuing jurisdiction over an order allocating the dependency exemption in a paternity action. Under R.C. 3111.16, the juvenile court has continuing jurisdiction to modify or revoke judgments issued under R.C. 3111.01 to 3111.19, which includes judgments that concern "the duty of support * * * or any other matter in the best interest of the child * * *" issued under R.C. 3111.13(C). In *Bobo, supra,* 38 Ohio St.3d at 332–333, 528 N.E.2d at 183, this court recognized that the allocation of the exemption could be in the child's best interest. As a result, a juvenile court today has continuing jurisdiction in a paternity action over an order allocating the exemption.

While present statutes arguably do not apply to the 1979 agreed judgment entry because they took effect after the entry, see *Johnson v. Adams* (1985), 18 Ohio St.3d 48, 18 OBR 83, 479 N.E.2d 866, paragraph one of the syllabus, we nevertheless conclude that, even under preexisting law, the juvenile court had continuing jurisdiction over the allocation of the dependency exemption. It has long been recognized in Ohio that a court retains continuing jurisdiction over its orders concerning the custody, care, and support of children, even when the court's initial order was based on an agreement by the parents of the child. *Peters v. Peters* (1968), 14 Ohio St.2d 268, 43 O.O.2d 441, 237 N.E.2d 902, syllabus; *Corbett v. Corbett* (1930), 123 Ohio St. 76, 174 N.E. 10, paragraph one of the syllabus. A child affected by such an order is considered a ward of the court, which may always reconsider and modify its

---

1. Plaintiff does not argue that the juvenile court lacked the basic statutory authority in 1979 to include the exemption allocation order in its entry. Although plaintiff's counsel briefly argued during oral argument that no change of circumstances occurred vis-a-vis the allocation order, such argument was not raised in the court of appeals. The only issue properly before us regarding the continuing jurisdiction of the juvenile court is whether the court completely lacked such jurisdiction to modify the 1979 allocation order.

rulings when changed circumstances require it during the child's minority. See *In re Crist* (1913), 89 Ohio St. 33, 105 N.E. 71; *Corbett, supra,* 123 Ohio St. at 78, 174 N.E. at 11.

This rule of continuing jurisdiction is supported not only by the strong public policy of insuring the continued well-being of the child, but also by the recognition that the child's parents have a continuing duty of support throughout the child's minority. See *Colizoli v. Colizoli* (1984), 15 Ohio St.3d 333, 336, 15 OBR 458, 460, 474 N.E.2d 280, 283. This rule of continuing jurisdiction applied to child support in the context of paternity actions even at the time of the 1979 entry. See *State, ex rel. Niven, v. Tomblin* (1948), 82 Ohio App. 376, 38 O.O. 51, 81 N.E.2d 637 (continuing jurisdiction over support order in paternity action).

The allocation of the exemption concerns the support of the child. See, generally, *Cornejo, supra,* 53 Cal.3d at 1282–1283, 283 Cal.Rptr. at 412–413, 812 P.2d at 593–594 (collecting cases). The exemption is clearly meant to provide a federal tax allowance for the costs attributable to supporting children. This purpose is apparent in Section 152(e), which recognizes the custodial parent presumption only if the child received over half of his support from his parents. Given this purpose, it is logical that an order allocating the exemption would be as modifiable as orders providing for the payment of child support.

Furthermore, we would be creating an artificial distinction if we held that orders to pay support are modifiable but orders allocating the dependency exemption are not. Both types of orders relate to the parents' continuing duty to support their child. We conclude that the juvenile court retained continuing jurisdiction to modify the allocation of the dependency exemption made in the 1979 agreed entry.

We observe that the juvenile court would have had continuing jurisdiction if it had acted under a recent amendment to R.C. 3113.21. Paragraph (B)(10) of that section now states in part that a court may "reconsider which parent may claim the children * * * as dependents" when the court modifies, reviews, or reconsiders a child support order. Although this amendment to R.C. 3113.21 was not in effect at the time the juvenile court acted, it is a clear indication that the General Assembly concluded, as we have, that the issue of the dependency exemption should be modifiable. We reject plaintiff's argument that the juvenile court lacked continuing jurisdiction over the dependency exemption issue.

### III

Finally, plaintiff contends that the juvenile court's modification of its 1979 entry was improper because "the record is silent as to how the child's interest

is best promoted by the exemption allocation to the [defendant] * * *." In making this argument, plaintiff relies on *Bobo v. Jewell, supra,* in which this court stated, " * * * if a trial court exercises the authority to allocate a child dependency deduction to the noncustodial parent, the record must show that the interest of the child has been furthered." *Id.,* 38 Ohio St.3d at 332, 528 N.E.2d at 183.

The best-interest standard applied in *Bobo* is based on R.C. 3111.13(C). As stated above, the relevant portions of R.C. Chapter 3111 arguably do not apply to the modification of the 1979 agreed entry in this case. *Johnson v. Adams, supra.* Nevertheless, we apply a best-interest-of-the-child standard to the modification of the 1979 entry. See *Hulett v. Hulett* (1989), 45 Ohio St.3d 288, 294, 544 N.E.2d 257, 262 ("[W]e implicitly recognized [in *Johnson* ] that public policy in this area would henceforth be ascertained by reference to the clear statutory language chosen by the General Assembly and incorporated within R.C. Chapter 3111"); see, also, *Pruitt v. Jones* (1980), 62 Ohio St.2d 237, 238, 16 O.O.3d 276, 405 N.E.2d 276, 276–277; *State, ex rel. Gill, v. Volz* (1951), 156 Ohio St. 60, 63, 45 O.O. 63, 65, 100 N.E.2d 203, 206 (paternity statutes meant to obtain support and education for the child and to prevent the child from becoming dependent on the state); *Addams v. State, ex rel. Hubbell* (1922), 104 Ohio St. 475, 135 N.E. 667, paragraph three of the syllabus. In light of that standard, we conclude that the juvenile court applied the wrong standard in allocating the dependency exemption to defendant.

The juvenile court's stated reason for its allocation was that defendant "was paying under the recommended order 65% of the minors [*sic* ] support." In referring to defendant's "65%" portion of the child's support, the court was apparently referring to defendant's share of support under the Child Support Guidelines then applicable in former C.P.Sup.R. 75. According to a guidelines worksheet in the record, defendant's $72 weekly support order constituted 64.42 percent of the "total child support obligation" under the guidelines, based on his adjusted annual gross income of $26,180 and plaintiff's income of $14,460.

The juvenile court's analysis of percentages of support is inadequate when the dependency exemption is at issue. The allocation of the dependency exemption provided by Section 152(e), Title 26, U.S.Code may be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. Such savings would occur through allocation to the noncustodial parent only if the noncustodial parent's taxable income falls into a higher tax bracket than the tax bracket of the custodial parent. See *Bobo, supra,* 38 Ohio St.3d at 333,

528 N.E.2d at 183. If both parents' incomes are taxed in the same tax bracket, no net savings are realized by allocating the exemption to the noncustodial parent. In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates. See *Hodges v. Hodges* (1988), 43 Ohio App.3d 113, 114, 539 N.E.2d 709, 710 (federal dependency exemption controls who claims state exemption). The juvenile court did not consider any of these facts.

The juvenile court's analysis assumes that the parent having the greater support obligation under the guidelines should have the exemption. However, we do not perceive how it serves the child's best interest to allow the noncustodial parent to claim the exemption when there will be no net tax savings. While an additional exemption for the noncustodial parent may marginally increase his ability to pay support, the removal of an exemption would equally decrease the custodial parent's ability to support the child. The child's best interest is not furthered by this zero-sum transaction.

Moreover, we note that the noncustodial parent's greater share of support under the Child Support Guidelines is largely attributable to the fact that his or her gross income is usually greater than that of the custodial parent. When we consider the custodial parent's lesser income and closer day-to-day support relationship with the child, it would make little sense to allocate the exemption to the noncustodial parent merely because that parent is responsible for a higher percentage of the support obligation under the guidelines. Indeed, it appears to be in the child's best interest to leave the exemption with the custodial parent, where it would more directly serve the child's interest. By allocating the exemption to defendant because of his "65%" share of the support obligation, the juvenile court was not furthering the child's best interest.[2]

While we conclude that the juvenile court applied the wrong legal standard in allocating the exemption, we will not undertake a review of the record to determine whether the evidence was sufficient to justify the allocation of the exemption to defendant. Plaintiff's minimal briefing on that issue does not

---

2. Even though the juvenile court modified the referee's recommendation by allocating the exemption to defendant, it did not increase the $72 weekly support order recommended by the referee under the Child Support Guidelines. Since plaintiff does not argue that an upward deviation from the guidelines was necessary, we do not decide herein whether the juvenile court erred in not increasing defendant's support order. We similarly need not decide whether a downward deviation is necessary when the exemption remains with the custodial parent.

suggest such a review. We leave it to the juvenile court to apply the proper standard to the evidence in this case. Accordingly, we reverse the judgment of the court of appeals and remand the case to the juvenile court for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

SWEENEY, WRIGHT and H. BROWN, JJ., concur.

DOUGLAS and RESNICK, JJ., concur separately.

HOLMES, J., concurs in paragraph one of the syllabus, but dissents from the majority's opinion and would affirm the court of appeals.

DOUGLAS, J., concurring. I concur in the judgment of the majority which reverses the judgment of the court of appeals. I also join in Justice Resnick's separate concurrence.

I do not concur in the reasoning of the majority on the merit issue. The majority has set forth the applicable federal law. The general rule is that the custodial parent is entitled to the exemption. In the case at bar, none of the enumerated exceptions, contained in the Internal Revenue Code, to the general rule exists. I continue to adhere to my position set forth in *Bobo v. Jewell* (1988), 38 Ohio St.3d 330, 335–338, 528 N.E.2d 180, 185–187 (Douglas, J., concurring in syllabus and in judgment only).

ALICE ROBIE RESNICK, J., concurring. I concur in the reversal of the court of appeals. However, I would find that since the parties to this case made the allocation of the federal tax dependency exemption part of their original settlement agreement, which was later incorporated in the initial judgment entry pertaining to support, that order is non-modifiable as to the tax exemption. The parties specifically agreed that "[f]rom the fifth birthday of said child and thereafter, plaintiff [Barbara Singer] shall assume the right to claim the said child as a dependant [*sic*] on her income tax and defendant's right to such claim is thereby terminated." Nothing could be more clear. Defendant was to have the tax exemption up to the child's fifth birthday, and thereafter plaintiff was to have the exemption. The tax exemption in no way related to child support. Thus this clause is non-modifiable and consistent with Section 152(e), Title 26, U.S.Code.