OPINION
Petitioner-appellant, Joey J. Gilliam, appeals a decision of the Brown County Court of Common Pleas denying his motion to grant him (1) standard local rule visitation, and (2) a federal tax dependency exemption (the "tax exemption") for the parties' minor son.
On September 27, 1994, appellant and petitioner-appellee, Rebecca C. Gilliam, obtained a dissolution of their marriage. Pursuant to the parties' separation agreement incorporated in the dissolution decree, custody of the parties' two children, Cassey (born on November 5, 1988) and Cody (born on June 22, 1993), was granted to appellee. The separation agreement granted appellant visitation one night a week and "every other weekend from Saturday at 6:00 p.m. until Sunday at 6:00 p.m." The weekend visitation was to take place at the home of appellee who, pursuant to the separation agreement, "agree[d] she [would] leave the home during this period of visitation so [that appellant could] be alone with the children." The separation agreement also provided that appellant would pay $102.50 per week in child support for both children. The separation agreement made no provision for the allocation of the tax exemptions for the two children.
On October 25, 1996, appellant filed a motion seeking standard local rule visitation and a tax exemption for Cody. Following a hearing on February 28, 1997, the trial court denied appellant's motion by judgment entry filed October 28, 1997 as follows:
 1. The Court finds that the parties are currently operating under a visitation order regarding the two minor children, Cassey * * * and Cody as set forth in Article 2 of the Separation Agreement attached to the Decree of Dissolution filed September 27, 1994.
 2. The Court further finds that the current visitation plan is not working, and that the same has not been implemented by the parties as stated. Specifically, the Court finds that the petitioner Rebecca Gilliam (hereinafter "Rebecca") does not leave her home, and consequently the petitioner Joey Gilliam (hereinafter "Joey") does not exercise overnight visitation.
 3. The petitioner Joey testified, in regard to his request for overnight visitation, that he would not force Cassey to stay overnight, and he acknowledged that Cassey has indicated that she does not wish to stay overnight.
 4. The petitioner Joey's Aunt Merle Stone, who testified as a witness, appears to be concerned regarding the welfare of the children and the Court would find her to be a good person to exercise some supervision and coordination over visits by the children with Joey.
 5. The testimony established that Cassey is somewhat fearful of her father, and specifically in so far [sic] as Joey's threat or threats regarding Rebecca.
 6. Joey needs to develop a relationship with the children, and in so doing he must be regular in his visits with them.
 7. The Court finds from the testimony and evidence that Joey apparently needs to somewhat more closely supervise the children, and to not allow his enthusiasm for sports and sporting events to overshadow his time and attention toward the children.
 8. The Court, in its interview with Cassey, has determined that Cassey is in fact reluctant to stay overnight with her father at this time; that more attention needs to be paid to each of the children and that Cassey should not in effect be a babysitter for Cody when the children are with their father; that their father does need to pay more attention to them; that both do miss their mother greatly, which would be magnified if overnight visitation were to occur at this time; and that there are times when Joey has spoken negatively regarding Rebecca in the presence of the children. These findings regarding Cassey are not specifically direct statements or assertions made by her, but are the Court's own interpretation of various statements and responses to questions by the Court.
 9. IT IS THEREFORE HEREBY ACCORDINGLY ORDERED AS FOLLOWS:
 A. No overnight visitation shall be afforded to the petitioner Joey Gilliam at this time.
 B. All visitation shall occur primarily at petitioner Joey Gilliam's Aunt Merle Stone's home in Vanceburg, Kentucky, provided she consents in writing and the same is filed with the Court. This does not preclude petitioner Joey Gilliam from taking the children other places, but Merle Stone's home will be considered the "home base" for visitation purposes.
 C. Petitioner Joey Gilliam's visitation with the children shall occur every weekend, upon alternating Saturdays and Sundays, from 9:00 A.M. until 8:00 P.M. In other words, visitation shall be Saturday one week and Sunday the next week, commencing Saturday, November 1, 1997. The Court, in effecting this order, acknowledges petitioner Joey Gilliam's one hour plus drive each way. Petitioner Joey Gilliam shall provide all transportation.
 In addition, at petitioner Joey Gilliam's option, he shall be afforded visitation one night per week from 5:00 P.M., with the children to be returned at 8:30 P.M., upon Wednesday evenings. Unless he indicates his intention to visit each and every Wednesday, he shall be required to give petitioner Rebecca Gilliam 48 hours advance notice of his intent to visit. He shall be free to take the children with him during this visitation period, providing they are properly supervised and in his presence.
* * *
 10. Pursuant to the foregoing, IT IS HEREBY ORDERED that the petitioner Joey Gilliam's Motion for Local Rule Standard Visitation is hereby denied, subject to the foregoing orders.
 11. IT IS FURTHER ORDERED that petitioner Joey Gilliam's Motion for Entitlement to Claim the Tax Exemption upon the minor child Cody is hereby denied. The Court finds that no evidence was presented regarding the same.
* * *
Appellant timely filed this appeal and raises two assignments of error. In his first assignment of error, appellant argues that the trial court's denial of appellant's motion for standard visitation was an abuse of discretion. Appellant contends that the trial court did not properly consider the factors set forth in R.C. 3109.04(F)(1) when it denied his motion.
It is well-established that trial courts have broad discretion when ruling on motions to modify visitation rights. Booth v. Booth (1989), 44 Ohio St.3d 142, 144. Thus, a trial court's decision on a motion to modify visitation rights will not be reversed absent an abuse of discretion. An abuse of discretion is more than an error of law or judgment and implies that the trial court's decision is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
Contrary to appellant's assertion, the trial court did not have to consider the factors set forth in R.C. 3109.04(F)(1) when entertaining appellant's motion for visitation. In Moore v. Moore (Dec. 29, 1997), Madison App. No. CA97-04-016, unreported, we held that modification of visitation upon a request by a nonresidential parent is governed by R.C. 3109.051 and does not require proof of changed circumstances, only that the modification would be in the child's best interest.
In making a determination that modification of visitation is in the best interest of the child, the trial court must take into account the factors set forth in R.C. 3109.051(D), which provides in pertinent part:
 In determining whether to grant companionship or visitation rights to a parent, grandparent, relative, or other person pursuant to this section * * * in establishing a specific visitation schedule, and in determining other visitation matters under this section * * *, the court shall consider all of the following factors:
 (1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity, * * *
 (2) The geographical location of the residence of each parent and the distance between those residences, * * *
 (3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, the child's and the parents' holiday and vacation schedule;
(4) The age of the child;
 (5) The child's adjustment to home, school, and community;
 (6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to visitation by the parent who is not the residential parent * * *, as to a specific visitation schedule, or as to other visitation matters, the wishes and concerns of the child, as expressed to the court;
(7) The health and safety of the child;
 (8) The amount of time that will be available for the child to spend with siblings;
(9) The mental and physical health of all parties;
 (10) Each parent's willingness to reschedule missed visitation and to facilitate the other parent's visitation rights * * *;
* * *
 (14) Whether either parent has established a residence or is planning to establish a residence outside this state;
 (15) Any other factor in the best interest of the child.
A thorough review of the record shows that it fully supports the trial court's findings of fact as set forth in its October 28, 1997 judgment entry and more particularly the trial court's findings that (1) the visitation plan set forth in the separation agreement was not working in part because appellee would not leave her home as required under the separation agreement; (2) appellant needs to develop a relationship with his children and in so doing must be regular in his visits with them; and (3) appellant needs to more closely supervise his children and not allow his enthusiasm for sports and sporting events to overshadow his time and attention with the children.
While appellant generally challenges the denial of his motion for standard visitation, he more specifically challenges the denial of overnight visitation and the trial court's determination that the home of Merle Stone, appellant's aunt, should be the "home base" for visitation purposes.
In its judgment entry, the trial court denied overnight visitation on the basis that the court, "in its interview with Cassey, has determined that Cassey is * * * reluctant to stay overnight with her father at this time[.]" At the close of the hearing held on February 28, 1997, the trial court stated that, while much of its concern dealt with Cassey, the court was also concerned about splitting up the children during visitation. Based upon this court's decision in Donovan v. Donovan (1996),110 Ohio App.3d 615, appellant argues that since the trial court made no record of its in camera interview with Cassey, this court's order should be based solely upon the testimony at the hearing.
In Donovan, we held that pursuant to R.C. 3109.04(B)(2)(c), trial courts must "make a record of any in camera interview with children involved in custody proceedings, to be kept under seal for review on appeal * * *." Id. at 620. We further held that "an audio recording, video recording or stenographic record [must] be made * * *. This will ensure that an appellate court can effectively review the trial court's decision pertaining to custody matters." Id.
While the holding in Donovan applied solely to the recordings of in camera interview with children involved in custody proceedings, we note that the language of R.C. 3109.051(C), which governs in-chambers interview of children in visitation matters, is identical to the language of R.C. 3109.04(B)(2)(c). We agree with appellant that, based upon our decision in Donovan and in light of the identical language of R.C. 3109.04(B)(2)(c) and3109.051(C), our decision in the case at bar cannot be based upon the trial court's interview with Cassey.
Not taking into account the trial court's interview with Cassey, we nevertheless find that the trial court had sufficient evidence upon which it could determine the wishes of Cassey regarding overnight visitation. During the hearing, appellant testified that Cassey had told him "dad, I will go with you as far as visiting you, but I don't want to stay all night with you." Appellant testified that while it would hurt him for her not to go on overnight visitation, he would not force her to go. Appellee testified that Cassey did not want to spend overnight visitation with appellant and that Cassey felt she had to watch her brother when visiting appellant.
In light of the trial court's decision to keep the children together for visitation purposes and in light of Cassey's opposition to spend overnight visitation with appellant as testified to by both parents, we cannot say that the trial court's decision to not grant overnight visitation "at this time" is so unreasonable, arbitrary, or unconscionable as to connote an abuse of discretion. We note that pursuant to R.C. 3105.65(B), the trial court retains continuing jurisdiction "to modify all matters pertaining to the allocation of parental rights and responsibilities for the care of the children, to the designation of a residential parent * * *, and to visitation." Thus, nothing prevents the trial court to order overnight visitation in the future if that would be in the best interest of the children.
Appellant also challenges the trial court's choice of his aunt's home as the "home base" for visitation purposes. Appellant contends that absent any testimony that his home was not fit for visitation, "[t]here simply is no justifiable basis for the court's order requiring the visitation to occur at a location other than Mr. Gilliam's residence." We note, however, that at the close of the hearing, the trial court instructed both parties to agree on a place other than appellee's home for visitation purposes. The trial court then stated to both parties that if they could not agree on a place, the trial court would make the decision for them. In its judgment entry, the trial court found that neither party had presented any possible site for the court's consideration. In light of appellant's apparent failure to propose his residence as a visitation site, appellant now cannot be heard to complain.
In addition, we find that the trial court's choice of Merle Stone's house as the "home base" for visitation purposes reflects an attempt by the trial court to reasonably require a stable and neutral environment for a meaningful visitation for the children's benefit. Moreover, the trial court's judgment entry clearly states that while "[a]ll visitation shall occur primarily at [appellant's aunt's home], this does not preclude [appellant] from taking the children other places." In light of the foregoing and in light of the trial court's continuing jurisdiction, we find no abuse of discretion in the trial court's choice of Merle Stone's house as the "home base."
With regard to the visitation schedule as ordered by the trial court, we find that it is not so unreasonable, arbitrary, or unconscionable as to connote an abuse of discretion. While it is not what appellant asked for, we find that it actually provides a more meaningful visitation between appellant and his children by giving them the opportunity to see one another every weekend rather than every other weekend, as well as one evening a week. Because visitation is no longer required to take place at appellee's home, it gives appellant what he could not have under the separation agreement, to wit: More quality time on a consistent and more frequent basis with his children, and more importantly, an opportunity to develop a direct relationship with his children away from appellee. We therefore find that the trial court did not err in denying appellant's motion for standard visitation at this time. Appellant's first assignment of error is overruled.
In his second assignment of error, appellant argues that the trial court erred in failing to award him a tax exemption for Cody, especially in light of the fact that (1) appellant, who is current on his support payments for both children, pays $102 per week in child support for both children, and (2) appellant pays the $394 monthly payment for the mobile home in which appellee and their children live, "which * * * directly benefits the children." It is appellant's contention that the "court did not consider the evidence that was presented and did not apply the `best interests' test in reaching its decision."
R.C. 3113.21(C)(1)(f) provides that a trial court may "reconsider which parent may claim the children * * * for federal income tax [dependency exemption] purposes" when the court modifies, reviews or reconsiders a child support order. "Although the federal income tax code creates a presumption in favor of awarding the tax exemption to the residential parent, trial courts have the authority to award the exemption to the nonresidential parent." Section 152(e), Title 26, U.S. Code; Hurchanik v. Hurchanik (1996), 110 Ohio App.3d 628, 630. "A trial court may not exercise this authority, however, unless the record shows that doing so will further the interest of the child." Id.
The nonresidential parent may be awarded the tax exemption only if court-ordered child support payments are current in full. R.C. 3113.21(C)(1)(f). In addition, "[a] parent is not automatically entitled to the exemption when that parent is ordered to pay child support. * * * Supporting one's children is not an option, but a duty." Bobo v. Jewell (1988), 38 Ohio St.3d 330,332.
In Singer v. Dickinson (1992), 63 Ohio St.3d 408, the Supreme Court of Ohio set forth specific guidelines governing when a trial court may award the tax exemption to the nonresidential parent as follows:
 The allocation of the dependency exemption * * * may be awarded to the noncustodial parent when that allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. * * * In determining whether taxes would be saved by allocating the federal tax dependency exemption to the noncustodial parent, a court should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state and local income tax rates.
Id. at 415-416.
In the case at bar, no evidence exists in the record which demonstrates the parties' gross incomes, their expenses, either of the parties' exemptions and deductions they are entitled to claim, or the relevant federal, state, and local income tax rates. With regard to appellant's mobile home monthly payments, we find that while they do indeed benefit the children, consideration of such payments was nevertheless properly rejected by the trial court. The parties' separation agreement clearly identifies these payments as marital debt and provides that "Husband agrees to pay all of the mobile home payments until it is paid off. However, in the event that the Wife will remarry, then in such event the Husband will no longer have the obligation to pay the house payment." The separation agreement further provides that "this provision shall not be construed as spousal support, but, is in fact a division of property and allocation of debts."
In light of the presumption in favor of awarding the tax exemption to the residential parent and appellant's failure to present any evidence to overcome such presumption, we find no error in the trial court's failure to award a tax exemption for Cody to appellant. Newsome v. Davis (Sept. 7, 1993), Greene App. No. 92-CA-89, unreported. Appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.