JOURNAL ENTRY AND OPINION
Plaintiff-appellant-mother Cynthia L. Sords, the former spouse of defendant-appellee-father Jeffrey M. Sords, appeals from the post-divorce judgment regarding (1) the determination that no arrearage existed in child support payments and (2) the reallocation of the dependency tax exemption for future years. For the reasons adduced below, we affirm.
A review of the record on appeal indicates that the parties were married on March 20, 1987, and divorced on December 1, 1992. One child, Amy Sords (d.o.b. March 15, 1988), was born to the parties during the term of the marriage. The divorce decree provided, in pertinent part that, in addition to his paying for health insurance for the child, the father pay child support in the amount of $45.00 per week plus 2% poundage (which represents a total weekly payment of $45.90, see Journal Vol. 2080, pages 91-92, 101) through the Child Support Enforcement Agency (CSEA), and that [A]ll payments which are not made through the Child Support Enforcement Agency shall not be considered as payment of support. Journal Vol. 2080, page 91.
On December 5, 1995, the trial court found the father to be in arrears on child support in the amount of $2,816.10 as of November 27, 1995, and the parties agreed that the father would continue to pay $195.00 per month as current support plus $108.33 per month (which sum includes the 2% poundage fee) toward the arrearage. See Journal Vol. 2712, page 200.
Thereafter, the parties had a series of communications with one another wherein it was advanced that the correct amount of child support should be $571.00 per month, effective November 1, 1996. The father did make several payments of $571.00 per month, and the plaintiff attempted to demonstrate through correspondence that an extra-judicial contract had been agreed to by the parties for this greater amount of child support.
On October 1, 1997, mother filed motions to determine child support arrearage (motion No. 311541) and to determine child support (motion No. 311542). These motions were heard by Magistrate Diane Palos on February 12, 1998. On June 3, 1998, the Magistrate issued an interim report (Report I), granting motion number 311542, and granting in part motion number 311541, concluding the following: (1) there was no contract between the parties for the greater amount of child support; (2) there was no child support arrearage or overpayment for child support; (3) the current level of child support should be modified due to a change in the financial circumstances of the parties to reflect a monthly child support amount of $625.75 (plus poundage) for the period of October 1 through December 31, 1997, and $665.00 (plus poundage) per month thereafter, with an additional $100.00 per month toward the arrearage created by the retroactivity of the matter; (4) mother receive the dependency tax exemption for tax year 1997, and the father receive the exemption thereafter commencing with tax year 1998.
With leave of court, the mother filed objections to Report I on August 31, 1998, alleging that the Magistrate erred as follows: (1) in concluding that no contract existed between the parties concerning an increase in child support; (2) in reallocating the dependency tax exemption; and, (3) that a child support arrearage should be found in the amount of $3,602.80. The mother requested that the determination of monthly child support in the amount of $625.75 commencing October 1, 1998, be affirmed.[1] On October 16, 1998, the father filed his responses to the mother's objections to Report I and urged that Report I be adopted in full.
On November 2, 1998, the trial court reviewed Report I and ruled as follows: (1) affirmed the conclusion of the Magistrate that no contract had been created by the parties regarding an increase in child support; (2) ordered the Magistrate to reconsider her recommendation regarding the tax dependency exemption in light of the fact that the mother had not remarried and the father had never been awarded the exemption.
On December 7, 1998, Magistrate Palos issued her amended report (Report II), stating in pertinent part the following:
 The issue in this matter relates to a subsequent exchange of information by the parties after the above Agreed Entry in which they attempted to modify child support. Counsel for Defendant contacted Plaintiff upon Defendant's reemployment and the incomes of the parties were collected by Defendant's counsel who ran a child support worksheet and told both parties that the correct amount of child support should be $571 per month. This exchange occurred in a series of letters which Plaintiff attempts to substantiate as a meeting of the minds and therefore, a contract of the parties. Defendant denies that there was any contract and that since the understanding whatever it was never memorialized or entered into the journal of this Court that it is unenforceable by this Court.
 Defendant cites to § 3113.21(M)(3) which provides that this Court shall make no retroactive modification of child support arrears for authority that this Court can not suddenly determine that the Defendant is in arrears based on Plaintiff's position. Plaintiff argues that the Court would not be retroactively modifying, but in fact, would be merely memorializing the understanding in the contract between the parties and merely enforcing it. Plaintiff cites § 3105.10(B)(2) which provides that the Court may enforce the Separation Agreement voluntarily entered into by the parties. The series of letters from counsel for Defendant to the Plaintiff and to the Defendant do not qualify as a contract. Plaintiff never signed any of the documents, there is nothing in writing other than letters written by counsel for Defendant, therefore there is no contract for this Court to enforce. Furthermore, § 3105.10(B)(2) does not apply in this matter as that relates to separation agreements not subsequent modification or putative modifications of separation agreements. Therefore, the Court finds that there is no enforceable contract between the parties for an increase in child support retroactive to 1996.
 However, although there is no specific contract, both Plaintiff and Defendant had an independent understanding that the correct amount of child support was $571 per month. Defendant paid $571 per month several (sic) after this number was provided to the Plaintiff by Defendant's counsel. Defendant, now frustrated by Plaintiff's attempts to seek arrearages in this matter has requested a judgment for any overpayment which sum the parties agreed would be approximately $3,541.20 as of January 27, 1998. Defendant in his closing argument stated that he is a good guy that he paid $571 and did what he was suppose (sic) to do. However, this statement is somewhat contradicted by the fact that in the same breath Defendant ask (sic) for a judgment for his overpayment and the collection of said amount from the Plaintiff. The Court finds that although there is not an enforceable contract with which to collect arrears back to 1996 in this matter, that any additional payments that the Defendant made prior to the filing of his motion are a gift and no more than a gift and that he has no right to collect those funds from the Plaintiff.
 The second issue in this matter relates to a current modification of child support. Both parties agree that the child support should be modified in accordance with the Ohio Child Support Statute. Plaintiff testified that her current gross income is $25,600. A pay stub of Plaintiff's was submitted by the Defendant for 1997, during which Plaintiff was on maturity (sic) leave for some period of time, shows a year to date earning of $24,615 and a 401K contribution of approximately $1,406. These sums are similar to the sums testified to Plaintiff as her income and as there is no proof of any other number being more accurate, the sum that Plaintiff testified to of $25,600 should be used as her income for the purpose of child support. Defendant testified that his gross income per year in 1997 pursuant to his W-2 is $44,939.38 said sum should be used to calculate the Child Support Guideline Worksheet.
 Pursuant to the Ohio Revised Code Statute Revised Code § 3113.215 and the Child Support Worksheet the appropriate amount of child support in this matter should be $625.75 per month. This sum represents a change of circumstances from the prior order as it is greater than a 10% difference between this order and the prior order. There is no reason to deviate from the statute, except for the issue of the tax exemption for the minor child.
 Defendant has requested the award of the tax exemption for the minor child. For the year 1997 the award of the tax exemption would result in approximately $742 tax savings for the Defendant. Plaintiff earned approximately $25,000. She is not remarried. Therefore, she is in a lower tax bracket than Defendant who earned $44,932.38 in 1997. Plaintiff has other tax advantages tdue (sic) to custody of the parties' child that Defendant does not have, such as head of household and the potential for earned income credit. At the lower tax bracket, the exemption in 1997 would result in atax (sic) savings to Plaintiff of approximately $424. In 1998 the tax exemption will include a tax credit of an additional $400 so that having the tax exemption would result in approximately $1,100 in tax savings to the Defendant or a tax savings of approximately $832 to Plaintiff. Based on the totality of the circumstances and the parties' agreement as to medical expenses pursuant to the prior order which orders will substantially continue, the Court finds that the equitable remedy would be to award the exemption to Defendant, however, to deviate upward from the child support guidelines support so as to provide a benefit to the Plaintiff of a portion of the tax exemption savings. Therefore, the Court finds that it would be unjust and inappropriate to Plaintiff and not in the best interest of the minor child to merely award the tax exemption to the Defendant without adjusting the child support upward so as to split the benefit in some way between the parties. Therefore, the Court finds that the child support order in this matter should be $625.75 per month for the filing date of October 1, 1997 through December 31, 1997 and $665 per month commencing January 1, 1998. The Plaintiff should be awarded the tax exemption for the tax year 1997 however, that the Defendant receive the tax exemption for the minor child, Amy, for all subsequent (sic) tax years commencing 1998 until further order of Court. Plaintiff should be ordered to execute a yearly IRS form releasing the tax exemption to the Defendant commencing with 1998 tax year.
 As to the issue of health insurance, the parties agreed that the Defendant has health insurance at a more reasonable cost and that Defendant should continue to provide health insurance pursuant to state law.
On December 7, 1998, the trial court adopted Report II in its entirety. See Journal Vol. 3302, pages 225-228.
On December 11, 1998, the mother filed her objections to Report II, presenting substantially the same arguments as contained in its previously filed objections relative to Report I.
On December 18, 1998, the trial court issued the following order:
 Upon the Court's own motion and for good cause shown, the Interim Order dated December 7, 1998 found at Volume 3302, Page(s) 225-228 is hereby effective until February 1, 1999.
IT IS SO ORDERED.
Journal Vol. 3309, page 769.
With leave of court, the father filed his response on January 8, 1999, to the mother's objections to Report II.
On March 12, 1999, the trial court reissued its order of December 7, 1998, overruling the mother's objections to Report II and adopting Report II in its entirety. See Civ.R. 53(E)(4); Journal Vol. 3355, pages 587-590. The mother's notice of appeal was filed on April 7, 1999, from this order of March 12, 1999.
The mother-appellant presents two assignments of error for review.
 I THE TRIAL COURT ERRED IN HOLDING NO ENFORCEABLE CONTRACT COULD BE CREATED BY THE ADMITTED AGREEMENT OF THE PARTIES AS TO AN INCREASE IN CHILD SUPPORT.
In this assignment, the mother argues that the evidence demonstrated that the parties entered into an enforceable, extra-judicial contract to increase the amount of monthly child support due from the father, and that the court erred in not modifying the child support (and in the process necessarily determining that an arrearage existed based on the breach of the alleged agreement to pay the higher amount of child support) to the time of the alleged contract. This assignment fails.
R.C. 3113.21(M)(3)-(4) provides:
 (3) Except as provided in division (M)(4) of this section, a court may not retroactively modify an obligor's duty to pay a delinquent support payment.
 (4) A court with jurisdiction over a support order may modify an obligor's duty to pay a support payment that becomes due after notice of a petition to modify the support order has been given to each obligee and to the obligor before a final order concerning the petition for modification is entered.
In the case sub judice, there was no motion to modify the child support order at the time of the alleged contract. Therefore, the court was without jurisdiction to retroactively modify the father's duty to pay the alleged arrearage caused by the alleged contract to increase the child support amount.
Appellant analogizes the present case to the case of In re Dunn (Clinton, 1995), 101 Ohio App.3d 1, in which the court found an enforceable extra-judicial written and signed contract to exist between a former husband and wife, with the purpose of the contract being to amend the provisions of their dissolution agreement (which was incorporated in the divorce decree) regarding child support in the form of post-high school education expenses for the children of the litigants. The case sub judice is not analogous to Dunn because we have no written and signed agreement by the parties, just correspondence by counsel.
There was some competent and credible evidence to support the determination of the court that a contract to modify the child support amount never came into existence. See Magistrate's report of December 7, 1998, supra. The mother, at the hearing conducted on February 12, 1998, testified, at page 28, that she knew that the alleged agreement would not be effectuated until a motion to modify support had been filed and an agreed judgment entry journalized. Given the manifest weight of the evidence before us, we cannot overturn that decision of the trial court. C.E. Morris Co. v. Foley Construction Co. (1987), 54 Ohio St.2d 279, 261.
The first assignment of error is overruled.
 II THE TRIAL COURT ABUSED ITS DISCRETION IN REALLOCATING THE DEPENDENCY EXEMPTION FOR FUTURE YEARS.
The following was stated in Hopton v. Preston (1998), 128 Ohio App.3d 571,574, relative to the reallocation of the tax dependency exemption:
 The trial court retains jurisdiction to modify the allocation of the income tax dependency exemption. R.C. 3113.21(C)(1)(f) provides that a trial court may "reconsider which parent may claim the children * * * as dependents for federal income tax purposes" whenever it modifies, reviews, or reconsiders a child support order. This court has held that, as in the case of a child support award, the trial court cannot modify the award of the dependency exemption unless the moving party demonstrates a change of circumstances. Hoban v. Hoban (1990), 64 Ohio App.3d 257, 260, 580 N.E.2d 1175, 1176-1177.
In Singer v. Dickinson (1992), 63 Ohio St.3d 408, 415, the Ohio Supreme Court held that the dependency tax exemption may be awarded to the nonresidential parent when such allocation would produce a net tax savings for the parents, thereby furthering the best interest of the child. A net tax savings would occur when allocating the dependency tax exemption to the nonresidential parent only if that parent's income fell into a higher tax bracket than that of the residential parent. Singer, supra, at 415.
In the case sub judice, the court reviewed the parties' income, taxes incurred, expenses, and the fact that the net tax savings runs in favor of the father. See Magistrate's report of December 7, 1998, supra, and the evidence submitted at the hearing on February 12, 1998. Thus, we cannot conclude that the trial court abused its discretion in allocating the tax dependency exemption to the father.
The second assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
ANN DYKE, A.J., and JOHN T. PATTON, J., CONCUR.
 ______________________________ JAMES D. SWEENEY, JUDGE
[1] The record reflects that sometime in August or September of 1998, the mother and child moved to Charlotte, North Carolina. See the father's motion to return minor child to the State of Ohio, filed October 2, 1998; and mother's notice of intent to relocate. Journal Vol. 3267, page 488. The mother and child moved back to Cuyahoga County prior to the March 12, 1999, final order of the trial court.