OPINION
{¶ 1} Defendant-appellant David Nist appeals from the November 1, 2002, Judgment Entry Decree of Divorce of the Delaware County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant David Nist and appellee Lisa Nist were married on April 7, 1999. One child was born as issue of the parties' marriage, namely, Derek Nist, who was born on June 17, 2001. On December 7, 2001, appellee filed a complaint for divorce against appellant in the Delaware County Court of Common Pleas, Domestic Relations Division. Appellant filed an answer to appellee's complaint and a counterclaim on January 10, 2002. Appellee filed an answer to the counterclaim.
 {¶ 3} Subsequently, a final hearing before a Magistrate commenced on May 28, 2002. The parties stipulated at the hearing that appellee earns $23,660.00 in gross annual income while working on average from 9:00 a.m. to 5:30 p.m. for North Main Motors, a business owned by her parents. In addition, appellee, who has two children from a previous marriage, receives $918.00 per month (or $11,016.00 a year) in child support for such children and, as of the date of the hearing, was receiving $188.00 every two weeks in child support from appellant for Derek. When asked, appellee admitted that if appellant's child support order continued, her annual income would total approximately $40,000.00. In addition to her income, appellee has the use of a car from her parents' business at no cost to her and also has a company gas card that appellee uses to pay for gas "back and forth from home and sitters." Transcript at 82.
 {¶ 4} Appellant, who is a police officer for the City of Maryville, has a base salary of $42,806.40 and also earns overtime. The average of appellant's overtime for three years is $8,831.68. Appellant's total income in 2001 was $51,227.74.
 {¶ 5} At the hearing, testimony was adduced regarding the amount of time that appellant spends with Derek. As a policeman for the City of Marysville, appellant has Sundays and Mondays off. At the hearing, appellant testified that, on Mondays, he usually picks up Derek at 8:30 a.m. and has him until 5:45 or 6:00 p.m., when appellee gets off work. On Tuesdays, appellant usually trains a police dog for eight hours or more. According to appellant, on Tuesdays his visitation with Derek "varies with my schedule. Either my mom will come first thing in the morning and pick him up until I get back from training which is at 2:00 or 3:00 and I'll stay with Derek and my mom until she goes and picks my wife's two children and watches them at her house or she'll come in the afternoon while I go train at night and watch Derek and then go pick up my wife's two children and watch them at her home." Transcript at 124. Appellant also testified at the hearing that, on Wednesdays, he picks Derek up at 8:30 a.m. and remains with him until approximately 3:00 p.m. when appellant leaves for work. From 3:00 p.m. until appellee returns from work, appellant's mother watches Derek.
 {¶ 6} Appellant also testified that on Thursdays and Fridays, he is with Derek from approximately 8:30 a.m. until 5:45 p.m. Since appellant works on Saturdays from 7:00 p.m. until 3:00 a.m., he generally does not have visitation with Derek unless appellee "wants to work at the police department[1] or has something to do." Transcript at 125. When asked how often that occurs, appellant responded as follows: Three or four times." Transcript at 125. Appellant also testified that he generally has overnight visitation with Derek every other Sunday.
 {¶ 7} Appellant also testified that he has made significant in-kind contributions for Derek's benefit. At the hearing, appellant indicated that when he separated from appellee, he did not take any items for Derek except a swing that appellant's mother had purchased. According to appellant, since his separation, he has purchased a crib, some clothes, bottles, toys "and basically everything he needs to take care of a child." Transcript at 123. When asked, appellant estimated that he spends between $100.00 and $200.00 a month on Derek in addition to paying child support and that, in setting up Derek's room, he initially spent between $500.00 and $600.00.
 {¶ 8} Following the hearing, the Magistrate, in a decision filed on May 30, 2002, recommended that the parties be granted a divorce. The Magistrate, in his decision, recommended that appellant be ordered to pay child support in the amount of $463.25 per month commencing June 1, 2002, for a period of 18 months ending November 30, 2003, and that, after such date, the amount of child support be increased to $491.70 per month. The Magistrate further recommended as follows:
 {¶ 9} "The Husband may claim the child as an income tax dependent provided the Husband is current in child support for the child and provided that for each year that the Husband claims the child, the Husband pays the Wife the sum of $1,000.00 at the time the Husband receives his tax refund or at the time of filing if the Husband does not receive a tax refund. For years in which the Husband is not allowed by tax-law to claim the child as an under age 17 tax credit, the sum the Husband shall pay to the Wife shall be reduced to $500.00. The Wife shall execute any documents necessary to effectuate this award. The award of income tax dependency is reviewable with support."
 {¶ 10} Thereafter, on June 12, 2002, appellant filed objections to the Magistrate's Decision. Appellant, in his objections, argued, in part, that the Magistrate erred in failing to deviate from the child support guidelines based upon the "extended periods of companionship and significant in-kind contributions" from appellant and that the Magistrate erred in allocating the federal income tax dependency exemption. Appellant specifically argued, in part, that although the Magistrate recommended that the tax exemption be allocated to appellant, "the Magistrate negated any tax savings that the Defendant/Husband would have enjoyed by ordering him to pay the Plaintiff/Wife the sum of $1,000.00 for each year that he claims the minor child." Thus, appellant argued that the Magistrate in essence, recommended that the tax exemption be awarded to appellee. As memorialized in an entry filed on November 1, 2002, the trial court overruled appellant's objection with respect to the issue of a deviation in child support, finding that the Magistrate did not err in failing to deviate downward in the calculation of child support. The trial court, in its entry, further overruled appellant's objection with respect to the income tax exemption, finding that it was in the best interest of the child to allocate the same to appellee "who needs it most."
 {¶ 11} A Judgment Entry Decree of Divorce also was filed on November 1, 2002. The trial court, in the Judgment Entry Decree of Divorce, ordered appellant to pay child support in the amount of $493.48 per month commencing June 1, 2002, and that appellee "may claim the child as an income tax dependent." The trial court further adopted a shared parenting plan.
 {¶ 12} It is from the trial court's November 1, 2002, Judgment Entry that appellant now appeals, raising the following assignments of error:
 {¶ 13} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FAILED TO AWARD THE DEFENDANT-APPELLANT A DEVIATION IN HIS CHILD SUPPORT OBLIGATION TO ACCOUNT FOR THE EXTENDED PERIOD OF VISITATION THAT HE HAS WITH THE MINOR CHILD AND HIS SIGNIFICANT IN-KIND CONTRIBUTIONS FOR THE BENEFIT OF THE MINOR CHILD.
 {¶ 14} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT AWARDED THE FEDERAL INCOME TAX DEPENDENCY EXEMPTION SOLELY TO THE PLAINTIFF-APPELLLEE WITHOUT CONSIDERING THE TOTAL TAX SAVINGS, THE EXTENDED VISITATION OF THE DEFENDANT-APPELLANT AND THE BEST INTERESTS OF THE MINOR CHILD."
 I {¶ 15} Appellant, in his first assignment of error, argues that the trial court abused its discretion in failing to award appellant a deviation in his child support obligation "for the extended period of visitation appellant has with the minor child and appellant's significant in-kind contributions for the minor child's benefit." We disagree.
 {¶ 16} In reviewing matters concerning a child support deviation, the decision of the trial court should not be overturned absent an abuse of discretion. Booth v. Booth (1989), 44 Ohio St.3d 142, 144,541 N.E.2d 1028. In order to find an abuse of discretion, we must find that the court's action is unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1989),5 Ohio St.3d 217, 219, 450 N.E.2d 1140.
 {¶ 17} Revised Code 3119.22 permits a trial court to order an amount of child support that deviates from the figure that results from the use of the basic child support schedule and the applicable worksheet if, after considering the factors set forth in R.C. 3119.23, the court determines that the basic amount would be unjust or inappropriate and would not be in the child's best interest. R.C. 3119.23 states, in relevant part, as follows:
 {¶ 18} "The court may consider any of the following factors in determining whether to grant a deviation pursuant to section 3119.22 of the Revised Code:
 {¶ 19} " (A) Special and unusual needs of the children;
 {¶ 20} "(B) Extraordinary obligations for minor children or obligations for handicapped children who are not stepchildren and who are not offspring from the marriage or relationship that is the basis of the immediate child support determination;
 {¶ 21} "(C) Other court-ordered payments;
 {¶ 22} "(D) Extended parenting time or extraordinary costs associated with parenting time, provided that this division does not authorize and shall not be construed as authorizing any deviation from the schedule and the applicable worksheet, through the line establishing the actual annual obligation, or any escrowing, impoundment, or withholding of child support because of a denial of or interference with a right of parenting time granted by court order;
 {¶ 23} "(E) The obligor obtaining additional employment after a child support order is issued in order to support a second family;
 {¶ 24} "(F) The financial resources and the earning ability of the child;
 {¶ 25} "(G) Disparity in income between parties or households;
 {¶ 26} "(H) Benefits that either parent receives from remarriage or sharing living expenses with another person;
 {¶ 27} "(I) The amount of federal, state, and local taxes actually paid or estimated to be paid by a parent or both of the parents;
 {¶ 28} "(J) Significant in-kind contributions from a parent, including, but not limited to, direct payment for lessons, sports equipment, schooling, or clothing;
 {¶ 29} "(K) The relative financial resources, other assets and resources, and needs of each parent;
 {¶ 30} "(L) The standard of living and circumstances of each parent and the standard of living the child would have enjoyed had the marriage continued or had the parents been married;
 {¶ 31} "(M) The physical and emotional condition and needs of the child;
 {¶ 32} "(N) The need and capacity of the child for an education and the educational opportunities that would have been available to the child had the circumstances requiring a court order for support not arisen;
 {¶ 33} "(O) The responsibility of each parent for the support of others;
 {¶ 34} (P) Any other relevant factor."
 {¶ 35} In addition, R.C. 3119.24, which is captioned "Shared parenting provisions," authorizes a deviation in the amount of child support on the basis of extraordinary circumstances or any of the other factors or criteria set forth in R.C. 3119.23. Revised Code 3119.24(B) states as follows:
 {¶ 36} "(B) For the purposes of this section, `extraordinary circumstances of the parents' includes all of the following:
 {¶ 37} "(1) The amount of time the children spend with each parent;
 {¶ 38} "(2) The ability of each parent to maintain adequate housing for the children;
 {¶ 39} "(3) Each parent's expenses, including child care expenses, school tuition, medical expenses, dental expenses, and any other expenses the court considers relevant;
 {¶ 40} "(4) Any other circumstances the court considers relevant."
 {¶ 41} The Supreme Court of Ohio has held that a parent is not entitled to an automatic deviation under a shared parenting order and that a deviation may be granted only after consideration of any extraordinary circumstances and other factors listed in R.C. 3113.215(B)(3) (now R.C. 3119.23), and then only if the deviation is in the best interest of the child. Pauly v. Pauly, 80 Ohio St.3d 386, 1997-Ohio-105,686 N.E.2d 1108.
 {¶ 42} At the final hearing in this matter, appellant, when asked why he believed that a deviation in child support would be appropriate in this case, responded as follows:
 {¶ 43} "Um, I guess I'd like to take consideration of two things. Number one, the amount of quality time that I spend with my child. I'm kind of blessed about having the job that I do that allows me to spend nine hours a day during the day with my son, you know not all dads can say that. That's going to be the time when I teach him how to read and write and throw baseballs and all that stuff, so I'm pretty lucky about how that's worked out.
 {¶ 44} "Also, the income contributions that I make towards him. I'm the one that pays for his food which she's supposed to pay for. I didn't realize she was supposed to pay for this stuff. I pay for the food while he's at my house; I pay for his formula, his diapers, his wipes. I pay for, I pay for everything that's there." Transcript at 128.
 {¶ 45} The trial court, in its ruling on appellant's objections to the Magistrate's Decision, stated, in part, as follows in finding that the Magistrate did not err in failing to deviate downward in the calculation of child support:
 {¶ 46} "The Husband has lunch expenses for the child every weekday. However, the Husband's budget shows take-home pay of $2,700.00 per month (after the payment of child support) and expenses and debt payments of $2,051.00 for a positive difference of $649.00. The Wife's budget shows take-home pay and child support received for her other children of $2,498.80 and expenses of $2,953.31 for a negative difference of $454.51. Under these circumstances, it was not in the best interest of the child to deviate in the calculation of child support."
 {¶ 47} The trial court, in its entry overruling appellant's objections, clearly considered the amount of time appellant spends with his son and noted that appellant has daily expenses associated with caring for his son. The trial court specifically noted that while appellant spends approximately 39 hours during the week with his son, appellant only has approximately two overnight visits a month with Derek. However, even after considering such factors, the trial court deemed that it was in Derek's best interest to deviate in the calculation of child support since the appellee's monthly expenses exceeded her take-home pay while appellant had a monthly surplus.
 {¶ 48} Based on the foregoing, we find that the trial court did not abuse its discretion in failing to award appellant a deviation in the amount of child support since the trial court's decision was not arbitrary, unreasonable or unconscionable.
 {¶ 49} Appellant's first assignment of error is, therefore, overruled.
 II {¶ 50} Appellant, in his second assignment of error, argues that the trial court abused its discretion when it awarded the federal income tax exemption solely to appellee "without considering the total tax savings, the extended visitation of the Defendant-Appellant and the best interests of the minor child." We disagree.
 {¶ 51} As with other domestic relations issues, a trial court's decision awarding the tax dependency exemption to a party is reviewed for an abuse of discretion. Corple v. Corple (1997), 123 Ohio App.3d 31, 33,702 N.E.2d 1234. Thus, pursuant to Blakemore, supra., we must determine whether the trial court's decision in awarding the exemption to appellee was arbitrary, unconscionable or unreasonable.
 {¶ 52} Ohio law provides the manner in which a state court may allocate a tax exemption. The trial court must find that "the interest of the child has been furthered" before it can allocate the tax exemption to the noncustodial parent. Bobo v. Jewell (1988), 38 Ohio St.3d 330, 332,528 N.E.2d 180. The best interest of the child is furthered when the allocation of the tax exemption to the noncustodial parent produces a net tax savings for the parents. Singer v. Dickinson (1992), 63 Ohio St.3d 408,588 N.E.2d 806, paragraph two of the syllabus. Such net tax savings for the parents can only occur when the noncustodial parent's taxable income falls into a higher tax bracket. Id. at 415-416. When determining the net tax savings to the parties, a trial "court should review all pertinent factors, including the parents' gross incomes, the tax exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates." Id. at 416. (Such a review is sometimes referred to as a "Singer analysis.")
 {¶ 53} R.C. 3119.82 which became effective March 22, 2001, added additional factors to consider in allocating the tax exemption. Such section states as follows: "If the parties agree on which parent should claim the children as dependents, the court shall designate that parent as the parent who may claim the children. If the parties do not agree, the court, in its order, may permit the parent who is not the residential parent and legal custodian to claim the children as dependents for federal income tax purposes only if the court determines that this furthers the best interest of the children and, with respect to orders the court modifies, reviews, or reconsiders, the payments for child support are substantially current as ordered by the court for the year in which the children will be claimed as dependents. In cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children."
 {¶ 54} In the case sub judice, the Magistrate, in his decision, noted that appellant's base pay was $42,806.40 and that appellant earned $8,421.34 in overtime in 2001, for a total 2001 income of $51,227.74. The Magistrate further noted that the parties stipulated that appellee earned $23,660.00 per year and that appellee received child support for her other two children in the amount of $918.00 per month, or $11,016.00 per year. The Magistrate, in his decision, indicated that both parties paid local income tax at the rate of 1% and that while appellant was in a 32.2% tax bracket, appellee was in a 19.5% tax bracket.
 {¶ 55} The trial court, in its November 1, 2002, entry overruling appellant's objections to the Magistrate's Decision, noted that "the Magistrate's Decision calculated that the Husband [appellant] would save $1,490.00 if he were permitted to claim the child as an income tax dependent ($890.00 for the dependency and $600.00 for the under age 17 credit) and that the Wife [appellee] would save $1,121.00 if she were permitted to claim the child as an income tax dependent." In overruling appellant's objection to the award of the income tax exemption to appellee, the trial court held that "[g]iven the disparity in the net monthly budgets of the Parties (the Husband is $649.00 per month to the positive and the Wife is $454.51 per month to the negative) it is in the best interest of the child to allocate the income tax exemption to the Wife who needs it most."
 {¶ 56} Based on the foregoing, we find that the trial court did not abuse its discretion in awarding the income tax exemption to appellee since such decision was not arbitrary, unconscionable or unreasonable. While appellant is in a higher tax bracket and would realize greater tax savings if the exemption were awarded to him, R.C. 3119.82, which became effective March 22, 2001, increases the court's discretion in determining best interests "to a level beyond that of merely net tax savings." SeeReichman v. Reichman, Tusc. App. No. 2001 AP 12 0112, 2002-Ohio-4712, citing Tarr v. Walter, Jefferson App. No. 01JE7, 2002-Ohio-3188. We concur with the trial court that the best interest of the child in this case is served by granting the exemption to appellee, who already is operating at a deficit every month.
 {¶ 57} Appellant's second assignment of error is, therefore, overruled.
 {¶ 58} Accordingly, the judgment of the Delaware County Court of Common Pleas, Domestic Relations Division is affirmed.
By: Edwards, J., Hoffman, P.J., and Wise, J. concur.
[1] Appellee also works as an auxiliary police officer for the City of Marysville.