DECISION.
Defendant-appellant Phyllis Arcuri (hereinafter referred to by her married name "Bender") appeals the domestic relations court's disposition of her motion for a modification of child support and for other relief against plaintiff- appellee, Vincent Arcuri, Jr. (hereinafter referred to as "Arcuri"). The parties were once married and have two children. Their marriage was dissolved by decree on October 4, 1993. On July 18, 1996, Bender filed a motion to modify child support and for other relief, including a request for two contempt orders against Arcuri, one for retaining a portion of the proceeds received from the sale of the marital home and the other for failing to provide medical insurance for the minor children, as well as an order awarding Bender both tax exemptions for the two children. Bender later dismissed without prejudice her request for the contempt orders. Two hearings were conducted in February and June 1997, and on July 7, 1997, an amended magistrate's decision with findings of fact and conclusions of law was placed of record. Of relevance here, the magistrate in that decision imputed an income to both parties, increased Arcuri's payment of child support by approximately seventy dollars, and awarded a tax exemption to each parent.
Bender filed objections to the magistrate's decision, essentially contesting the magistrate's findings relating to the amount of income imputed to both parties, the amount of child support awarded, and the tax-exemption award. After reviewing the record, the trial court, on December 18, 1997, overruled some of the objections, including those relating to Bender's income and the tax exemptions, sustained others relating to Arcuri's income and child-support payments, and remanded the case to the magistrate for further review. Pending further review by the magistrate, Bender reinstated her requests that Arcuri be held in contempt.
Two hearings were conducted in February and May 1999, and on August 11, 1999, the magistrate issued a decision and a supplemental decision with findings of fact and conclusions of law. Pertinent to our review, the magistrate did not change the rulings on the amount of income imputed to Bender and Arcuri, the child-support award, or the tax- exemption award. Further, the magistrate did not hold Arcuri in contempt for the division of the proceeds from the marital-home sale.
Bender again filed objections to the magistrate's decision, arguing that the magistrate had ignored the mandate of the trial court in its decision on the first objections, particularly as it related to Arcuri's imputed income and the computation of child-support payments. Additionally, she objected both to the failure to hold Arcuri in contempt and to the tax-exemption award. Following a hearing, the trial court overruled the objections and affirmed the magistrate's decision, with findings of fact and conclusions of law, on October 21, 1999. This appeal ensued.
Three assignments of error are raised on appeal. The assignments contest the court's approval of (1) the magistrate's determination that there was no contempt relating to the distribution of proceeds from the sale of the marital residence by Arcuri; (2) the amount of child support awarded; and (3) the tax-exemption award. For the reasons that follow, we affirm the judgment of the trial court.
Generally, the standard applied to a domestic relations court's determinations is abuse of discretion.[2] An abuse of discretion connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary, or unconscionable.[3]
In her first assignment of error, Bender asserts that Arcuri should have been held in contempt for nonpayment of the proceeds received from the sale of the marital residence. In a contempt proceeding, once the movant establishes by clear and convincing evidence that the obligor is in contempt, the burden shifts to the obligor to establish his inability to pay.[4] It is not a prerequisite to a finding of contempt that the violation be purposeful, willing, or intentional.[5]
Essentially, the first assignment addresses the separation agreement and the dispute between the parties over the interpretation of a debt to Arcuri's mother, Mary Ann Arcuri.[6] The separation agreement, which was signed by both parties and incorporated into the decree of dissolution, states in relevant part,
 3. PERSONAL FAMILY RESIDENCE: There is presently a personal family residence * * *. This property shall be placed on the market for sale immediately and sold at a price that is mutually agreed upon by the parties. * * * At the time of the sale and after all closing costs have been paid the parties shall divide equally any profits or losses as a result of said sale. * * *
 10. DEBTS: The Husband and Wife shall divide equally the debts to First USA Bank, Provident Bank and Citi Bank. The Husband [Arcuri] and Wife [Bender] shall assume and pay the debt to Mary Ann Arcuri.
Bender maintains that the debt to Mary Ann Arcuri referred to money given to discharge a credit-card debt which amounted to a few thousand dollars. Arcuri, however, maintains that the debt to his mother referred to money given for a down payment on the marital home, amounting to $25,000. By his account, after the closing on the marital residence, Arcuri repaid his mother for the $25,000 loan out of the proceeds of the sale of the marital residence and gave Bender $5000 from the remaining proceeds. Although Bender gave Arcuri authority to proceed with the closing on the house, Bender argues that Arcuri was in contempt for repaying Mary Ann Arcuri $25,000 and thereby failing to equally divide all of the proceeds from the sale of the residence.
The magistrate determined the following regarding Arcuri's decision to pay the debt to his mother from the proceeds of the sale of the marital residence:
 Although the parties might have chosen a better way to express their agreement regarding their financial obligations, this Magistrate finds that the terms of their Separation Agreement are not ambiguous. Both parties agreed that they owed money directly to Husband's mother. They both intended to obligate themselves to each other to the payment of $25,000.00 to Husband's mother, with each of them being responsible for one-half.
The magistrate accordingly refused to find Arcuri in contempt when he had simply followed the terms of the separation agreement by paying the debt to his mother. In affirming the magistrate's findings and conclusions relating to this issue, the trial court also ruled, after reviewing the evidence "at length," that the terms of the separation agreement were not ambiguous regarding the obligation to Mary Ann Arcuri, and the court adopted the magistrate's decision.
A separation agreement is a contract and is subject to the same rules of construction governing any other contract.[7] Therefore, if the terms in a separation agreement are unambiguous, the words must be given their plain, ordinary, and common meaning; but if a term is ambiguous, parole evidence may be admitted to explain its meaning.[8]
While we agree that the terms of the separation agreement relating to the debt owed to Mary Ann Arcuri are unambiguous, the amount of the debt to be repaid is not evidenced in the separation agreement or in the dissolution decree. A trial court is without authority to amend or add terms to a contract or to ignore the unambiguous provisions in a contract. But the court may define the unambiguous terms broadly so as to carry out the intent of the parties.[9]
While Arcuri and Bender held differing opinions relating to the amount owed to Mary Ann Arcuri, the trial court was entitled to make its own judgments as to credibility, because it was in the best position to observe the witnesses' gestures and voice inflections.[10] In light of this, we cannot say that Arcuri was improperly absolved of any contempt for failure to equally divide the proceeds from the marital home, because the record supports the magistrate's finding that the intent of the parties was to equally repay the $25,000 loan to Mary Ann Arcuri, and because, after repaying the loan, Arcuri equally divided the remaining proceeds from the sale. Accordingly, we hold that the trial court did not abuse its discretion in adopting the magistrate's findings and conclusions in this respect, and we overrule the first assignment.
Bender's second assignment of error basically asserts that the child-support award was improper. The overriding concern when awarding child support is to ensure the best interests of the children.[11]
When reviewing a request for a modification of an existing child-support order, the trial court may modify the child-support award where there is a substantial change in circumstance, such as a ten-percent deviation between the existing support payment and the recalculated one.[12] In determining child support, the trial court may consider both a parent's gross income and the parent's potential income, if the trial court determines from the facts and circumstances of the case that the parent is voluntarily underemployed or unemployed.[13] The potential income to be imputed to such a parent should be based on the amount the parent would earn if fully employed. The parent's recent work history, occupational qualifications, and the prevailing job opportunities and salary levels in the community in which the parent resides determine this amount.[14] Gross income may be calculated as the average income over a reasonable period of years.[15]
Bender challenges the amount of the child-support award. In particular, she challenges the gross income imputed to Arcuri for the purposes of determining child support. The record establishes that, at the time of the February 1999 hearing, Arcuri was employed and earned $8.50 per hour. Further, the record demonstrates that, at the time of the June 1997 hearing, Arcuri was working on a full-time basis, making $8.50 per hour. While there is evidence in the record that Arcuri held a wide variety of jobs at differing pay scales, we cannot say that the trial court erred by failing to increase Arcuri's gross income above nine dollars per hour. Further, the trial court did not err in excluding from its computation of Arcuri's gross income the nonrecurring cash payments received from his parents, because nonrecurring cash flow cannot be considered gross income.[16] Given that, we hold that the trial court did not abuse its discretion in adopting the magistrate's findings and conclusions relating to the imputation of Arcuri's gross income. Therefore, the child-support obligation, which is based on that imputation, need not be increased further.
Bender also argues that the trial court's October 1999 decision acted as a "pocket veto" of its December 1997 decision. We do not agree. It was well within the trial court's discretion to find that the new evidence presented at the two hearings conducted in 1999 was sufficient to overcome the objections that it had previously sustained. Accordingly, we overrule the second assignment of error.
In the third assignment of error, it is alleged that the trial court erred by awarding only one tax exemption to Bender. Generally, the custodial parent receives any tax exemptions.[17] But a trial court may award dependency exemptions to noncustodial parents when that will produce a net tax savings for the parents and, thus, further the best interest of the children.[18] Such a savings can only occur where the noncustodial parent's taxable income falls into a higher tax bracket.[19]
When determining the net tax savings to the parties, the court "should review all pertinent factors, including the parents' gross incomes, the exemptions and deductions to which the parents are otherwise entitled, and the relevant federal, state, and local income tax rates."[20]
The magistrate concluded that Arcuri would receive a tax benefit from the dependency exemptions, while Bender would not. But the magistrate further concluded that Bender's present husband, who is employed, would derive a tax benefit from a dependency exemption. Under these circumstances, the magistrate concluded that would be in the best interests of the children to award each parent one exemption.
Bender argues that she would have received the larger net tax savings had she received both exemptions because her husband earns more money than Arcuri. We disagree, particularly where there is no evidence in the record demonstrating such a benefit. Moreover, while we do not reach the issue here, we question whether it is proper to consider a stepparent's income as a pertinent fact in determining the net tax savings to parents.[21] Thus, although the evidence in the record relating to this issue is rather sparse, particularly the evidence relating to the relevant income-tax brackets, the record does support the conclusion that each parent should receive one exemption. In light of this, we cannot say that the trial court abused its discretion in affirming the magistrate's findings and conclusions, and we overrule the third assignment of error.
In sum, we hold that the trial court did not abuse its discretion in adopting the magistrate's decision, including the findings of fact and conclusions of law disputed in this appeal. The judgment of the trial court is accordingly affirmed.
 _________________________ Per Curiam.
 Gorman, P.J., Sundermann and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[2] See Booth v. Booth (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028,1030.
[3] See Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140, 1142.
[4] See Pugh v. Pugh (1984), 15 Ohio St.3d 136, 140, 472 N.E.2d 1085,1088.
[5] See id., paragraph one of the syllabus.
[6] Throughout this litigation Mrs. Arcuri's name has been spelled two different ways. We follow the spelling used in the separation agreement.
[7] See Forstner v. Forstner (1990), 68 Ohio App.3d 367, 372,588 N.E.2d 285, 288.
[8] See id.
[9] See id. at 372-373, 588 N.E.2d at 288.
[10] See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,82, 461 N.E.2d 1273, 1276.
[11] See Rock v. Cabral (1993), 67 Ohio St.3d 108, 616 N.E.2d 218.
[12] See R.C. 3113.215(B)(4). We note that R.C. 3113.215 has been amended several times since the original filing for modification in 1996, but these amendments do not affect our analysis of the assignments of error raised in this case.
[13] See Rock v. Cabral, supra, at 111, 616 N.E.2d at 221.
[14] See R.C. 3113.215(A)(5)(a).
[15] See R.C. 3113.215(B)(5)(h).
[16] See R.C. 3113.215(A)(2)(e) (formerly R.C. 3113.215 [A][2] at the time the request for modification was filed).
[17] See Will v. Will (1996), 113 Ohio App.3d 8, 10, 680 N.E.2d 197,199.
[18] See Singer v. Dickerson (1992), 63 Ohio St.3d 408, 588 N.E.2d 806, paragraph two of the syllabus.
[19] See id. at 415-416, 588 N.E.2d at 812, citing Bobo v. Jewell
(1988), 38 Ohio St.3d 330, 333, 528 N.E.2d 180, 183.
[20] Id. at paragraph three of the syllabus.
[21] See Will v. Will, supra, at 12, 680 N.E.2d at 199-200.