This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
Paul T. Bender has appealed a judgment of child support entered in the Summit County Court of Common Pleas, Domestic Relations Division. This Court affirms.
 I.
Paul and Cynthia Bender[1], the parents of three children[2], Scott, James, and Rebecca, had been married for nearly twenty years when Paul filed for divorce. All of the children were minors at the time.
Temporary child support was established during the pendency of the action. However, because the parties could not agree on the amount of money either party should be obligated to provide for the children, both parties, on a number of occasions, sought to modify the support order. In fact, the parties were granted a divorce on August 19, 1997, and the divorce decree resolved all issues between the parties, except child support.[3] The parties did agree on a Shared Parenting Plan and a Separation Agreement, which the trial court approved, adopted, and incorporated into the divorce decree.
Subsequently, the trial court entertained objections to a magistrate's decision which had been journalized prior to the judgment of divorce and which denied motions to modify the child support order. The court overruled the objections. Two months later, Paul again moved to modify his child support obligation and other financial responsibilities for the children. The month following, Cynthia filed her motion to modify the support obligation as well as all the financial responsibilities concerning the parties' children. A hearing on the parties' motions was held by a magistrate. The magistrate determined that Paul should pay child support in the amount of $189.15 per month per child, and claim Rebecca for income tax purposes, and that Cynthia would claim Scott and James as dependents on her income tax statements. The magistrate further decided that the effective date of the child support order was the first charge date after August 20, 1997.
Paul has timely appealed, and has assigned six errors for our review. Because assignments of error one through five concern similar issues of law and fact, they will be addressed collectively.
 II. First Assignment of Error THE TRIAL COURT ERRED IN ITS FACTUAL FINDINGS OF THE PARTIES' RESPECTIVE INCOMES.
 Second Assignment of Error THE TRIAL COURT ERRED IN ITS FAILURE TO UTILIZE ACCURATE FIGURES FOR DAY CARE AND MARGINAL COST FOR MEDICAL INSURANCE ON THE CHILD SUPPORT WORKSHEET.
 Third Assignment of Error THE TRIAL COURT ERRED IN MAKING ITS CHILD SUPPORT AWARD ALLOCATING THE FINANCIAL RESPONSIBILITIES BETWEEN THE PARENTS UNDER AN ORDER FOR SHARED PARENTING.
 Fourth Assignment of Error THE TRIAL COURT ERRED WHEN IT ESTABLISHED AN EFFECTIVE DATE OF THE NEW CHILD SUPPORT ORDER.
 Fifth Assignment of Error THE TRIAL COURT ERRED IN FAILING TO AWARD THE INCOME TAX DEPENDENCY EXEMPTIONS FOR THE CHILDREN TO THE PARENTS PER THEIR AGREEMENT.
Paul contends that the trial court committed reversible error in adopting the magistrate's decision regarding child support. Paul has challenged both the lower court's factual findings and legal conclusions.
When reviewing the propriety of a trial court's determination in a domestic relations case, this Court applies the abuse of discretion standard. See Rock v. Cabral (1993), 67 Ohio St.3d 108, 112. See, also, Booth v. Booth (1989), 44 Ohio St.3d 142 (applying the abuse of discretion standard to matters concerning child support). This is because "a trial court must have discretion to do what is equitable upon the facts and circumstances of each case." Booth, supra, at 144 citingCherry v. Cherry (1981), 66 Ohio St.2d 348. Accordingly, "a trial court's decision in domestic relations matters should not be disturbed on appeal unless the decision involves more than an error of judgment." Id. In other words, a reversal is only warranted when the "lower court's attitude was unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. Furthermore, when applying an abuse of discretion standard, a reviewing court is not free to merely substitute its judgment for that of the trial court. Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, 67; Holcomb v. Holcomb (1989), 44 Ohio St.3d 128,131. Rather, the appellate court must be guided by the presumption that the findings of the trial court are correct. In re Jane Doe 1 (1991),57 Ohio St.3d 135, 138, citing Seasons Coal Co. v. Cleveland (1984),10 Ohio St.3d 77, 80.
This Court also notes that, although the standard of review for the lower court's child support determination is abuse of discretion, challenges to factual determinations upon which the child support order is based must be reviewed using the "some competent credible evidence" standard. This means that a determination of fact will be upheld on appeal if there is some competent, credible evidence to support the finding. See Masitto v. Masitto (1986), 22 Ohio St.3d 63, 66 (applying the citing C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279
"some competent credible evidence" standard to the factual determination of whether a parent has relinquished his or her right to custody). See, also, Spinetti v. Spinetti (Mar. 14, 2001), Summit App. No. 20113, unreported (concluding that "when reviewing the factual conclusions underpinning the classification of property in divorce cases[,]" this Court reviews the record to determine "whether those findings are supported by some competent, credible evidence").
 A.
In his first assignment of error, Paul challenges the trial court's factual findings of the parties' incomes. Specifically, Paul asserts that the trial court failed to properly calculate the parties' "gross income" by excluding "recurring" cash flow items and by determining that Cynthia did not voluntarily leave her job. This Court disagrees.
First, Paul takes issue with the lower court's factual determination that monies Cynthia receives constitute nonrecurring or unsustainable income. This is because, as Paul correctly notes, "gross income" does not include "nonrecurring or unsustainable income or cash flow items[.]" R.C. 3113.215(A)(2)(e) and (A)(11). "Nonrecurring or unsustainable income" is defined as "any income or cash flow item that the parent receives in any year or for any number of years not to exceed three years and that the parent does not expect to continue to receive on a regular basis." R.C. 3113.215(A)(2)(e) and (A)(11). However, the record reflects that Cynthia testified that the cash flow was nonrecurring. The record also shows that one of Paul's witnesses and Cynthia's former employer, Mr. Coffman, testified that he did not know whether monies he had previously paid Cynthia would reoccur. Accordingly, this Court finds that the trial court's determination is supported by some competent credible evidence.
Additionally, Paul asserts that the trial court should have determined that Cynthia voluntarily left her job at Coffman-Bender, Inc., and therefore, should have imputed this income to Cynthia for child support purposes. This Court disagrees.
Mr. Coffman testified that he did not fire Cynthia, but rather her departure was due to her own volition. Cynthia testified that she was fired. Moreover, there was testimony that after many "heated discussions" between Mr. Coffman and Cynthia, Mr. Coffman changed the locks to the building while Cynthia was out of town.
It is fundamental that the weight of the evidence and credibility of witnesses are primarily for the trier of fact. See State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus. It was within the trial court's purview to believe that Cynthia did not voluntarily leave her employment. Accordingly, the trial court's finding that Cynthia did not voluntarily leave her job at Coffman-Bender, Inc. is supported by some competent credible evidence.
This Court notes that we have previously applied the abuse of discretion standard to the factual determination of whether a parent is voluntarily unemployed or voluntarily underemployed. See Cozzone v.Keglovic (Jan. 24, 2001), Summit App. No. 19951, unreported; Emary v.Emary (Oct. 23, 1996), Lorain App. No. 96CA006353, unreported, appeal not allowed (1997), 78 Ohio St.3d 1428. We did this based on the Supreme Court of Ohio's announcement in Rock v. Cabral (1993), 67 Ohio St.3d 108,112:
 Further, the question whether a parent is voluntarily (i.e., intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion, that factual determination will not be disturbed on appeal. See, generally, Booth v. Booth (1989), 44 Ohio St.3d 142, 541 N.E.2d 1028 (applying abuse of discretion standard to matters involving child support). "`The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable.'" Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482, 450 N.E.2d 1140, 1142.
We view the Supreme Court's decision to apply the abuse of discretion standard to a question of fact in Rock as an anomaly. See Masitto,supra. Our cases to the contrary are hereby overruled.
Furthermore, even were we to apply the abuse of discretion standard on this issue in the present case, we would overrule Paul's assignment of error. Because we have found that the trial court's finding that Cynthia did not voluntarily leave her job at Coffman-Bender, Inc. is supported by some competent credible evidence, we would find that the lower court did not abuse its discretion in so finding.
 B.
In his second assignment of error, Paul contends that the trial court erred by utilizing inaccurate figures for day care costs and medical insurance costs on the child support worksheet. This Court disagrees.
Paul claims that the trial court overstated Cynthia's cost for day care by including costs for Scott, who does not attend day care. In order to preserve an error for appeal, a party must timely advise the trial court of the error either by an objection or otherwise. Goldfuss v. Davidson
(1997), 79 Ohio St.3d 116, 121. A party's failure to notify the trial court of the error results in a waiver of the issue for appeal. Id. A review of the transcript reveals that in computing Cynthia's cost for day care, Paul agreed to the trial court's inclusion of a figure for Scott. Additionally, the record reveals that the marginal cost for medical insurance was determined by the parties to be $1380.00. Hence, this Court concludes that any error in computing the cost for day care or medical insurance is waived. Moreover, the record reflects that trial court relied on competent, credible evidence to determine the figures for day care and medical insurance.
 C.
In his third assignment of error, Paul argues that the trial court's child support order is wholly erroneous because, he asserts, the court improperly prepared and calculated the child support worksheet. Specifically, Paul argues that the proper way to calculate child support in a shared parenting plan is to determine what each parent should pay per the worksheet, and then to order the parent with the higher obligation to pay the person with the lower obligation the difference between the two amounts. If support is calculated in this manner, Paul stresses that he would not be obligated to pay child support because the children spend nearly half of their time with him. He argues that because the children spend half of their time with him, it follows that he is meeting half of their needs.
The Supreme Court of Ohio has held that a parent paying child support under a shared parenting plan is not entitled to an automatic credit for the time his children reside with him. Pauly v. Pauly (1997),80 Ohio St.3d 386. Rather, the court explained that the statute itself provides for such circumstances. Id. at 389. R.C. 3113.215(B)(6)(a) provides:
 [T]he court shall order an amount of child support to be paid under the child support order that is calculated in accordance with the schedule and with the worksheet set forth in division (E) of this section, through line 24, except that, if the application of the schedule and the worksheet through line 24, would be unjust or inappropriate to the children or either parent and would not be in the best interests of the child because of the extraordinary circumstances of the parents or because any other factors or criteria set forth in division (B)(3), the court may deviate from [that] amount[.]
"Extraordinary circumstances of the parents" include the amount of time that the children spend with each parent, the ability of each parent to provide adequate housing for the children, and the amount of each parent's expenses. R.C. 3113.215(B)(6)(b)(i), (ii), and (iii). The court may alter the amount of child support after evaluating the merits of the case and determining that the alteration is in the best interests of the child. Pauly, 80 Ohio St.3d at 389. However, the court must state the findings of fact that support its determination that the calculated amount is unjust or inappropriate and not in the best interests of the child. R.C. 3113.215(B)(1)(b). See, also, Marker v. Grimm (1992),65 Ohio St.3d 139, syllabus.
The record reveals that the trial court calculated the amount pursuant to R.C. 3113.215(B)(6)(a), and determined that the amount was unjust, inappropriate, and did not serve the best interests of the children. The court noted that this finding was based on factors, such as: (1) Cynthia has paid all of the incidental expenses for clothing and extracurricular activities; and (2) although both parents have the children close to 50% of the time, Cynthia has assumed a significantly greater parenting obligation because she stays home from work when the children are sick, and because she is primarily involved with the children's school and health care provider. The court then found that a deviation of 24.2% was reasonable. The record shows that the court then accurately prepared the child support worksheet by using the appropriate figures.[4]
Accordingly, the trial court's allocation of the financial responsibilities between the parents is supported by competent, credible evidence.
 D.
In his fourth assignment of error, Paul avers that the trial court erred in determining that the new child support order should be retroactive to the first charge date after August 20, 1997, which is more than eleven months prior to Paul's motion to reduce child support. This Court disagrees.
Ordinarily, a trial court's decision to modify a child support obligation is retroactive to the date the request for modification was first filed. See State ex rel. Draiss v. Draiss (1990),70 Ohio App.3d 418, 421. Nevertheless, a trial court "may modify non-delinquent child support obligations retroactively to a date prior to the filing of the motion to modify if special circumstances are demonstrated." Zaccardelli v. Zaccardelli (July 26, 2000), Summit App. No. 19894, unreported, citing Sprankle v. Sprankle (Mar. 25, 1998), Medina App. No. 2678-M, unreported. A trial court's determination to modify retroactively will not be disturbed absent an abuse of discretion. Hamilton v. Hamilton (1995), 107 Ohio App.3d 132, 139.
It cannot be disputed that the trial court gave great consideration to the issue of child support in this case. Temporary child support was first established on May 16, 1996. The order required Paul to pay $170.27 per month per child. In September of that year, Cynthia moved to modify the order, arguing that there was a substantial change in circumstances because Paul had gained employment. In April of 1997, Paul moved to modify the support order. He asserted that because under the Shared Parenting Plan the parties were equally dividing the time with the children, he should not have to pay $170.27 per month per child. A hearing was held on the parties' motions, which were denied on July 16, 1997. In making its decision to deny the motions, the court found that: (1) the existing order requires Paul to pay $170.27 per month per child; (2) the parties entered into a Shared Parenting Plan that gives Paul custody of the children 44% of the time, but that the children actually only spend 37% of their time with Paul; (3) the statutory child support amount would require Paul to pay $224.02 per month per child; (4) based on the amount of time Paul spends with the children, the statutory amount is unjust and unfair, and should therefore be adjusted downward by $24.4% to $169.39 per month per child; but that (5) because the revised amount is less than 10% below the existing order, a modification is not required. Paul filed objections.
The parties were granted a divorce on August 19, 1997, but the decree did not dispose of the child support issue. Rather, the court reviewed Paul's objections to the magistrate's decision not to modify the support order, and on May 21, 1998, overruled the objections. Two months later, on July 30, 1998, Paul filed another motion to modify the child support order, as well as all of the financial responsibilities relating to the children. The following month Cynthia also filed a motion to modify the child support obligation. Another hearing was held on the child support issue. On March 16, 1999, the magistrate found that since July of 1997, there has been a change in day care expenses and in the parties' incomes, that a 24.4% deviation from the statutory child support amount is fair and reasonable, and that Paul must pay $189.15 per month per child, effective August 20, 1997. Both Paul and Cynthia filed objections, which the trial court overruled.
After reviewing the record, this Court cannot say that the trial court's decision to make the child support order retroactive to August 20, 1997, was unconscionable. The trial court found that special circumstances existed which warranted making the order retroactive to a date prior to the filing of the July 30, 1998 motion to modify; although the last motion Paul filed to modify his child support obligation was on July 30, 1998, the court found that his income and the financial responsibilities of the children had actually changed since July of 1997. Accordingly, we find no merit in his assignment of error.
 E.
In his fifth assignment of error, Paul claims that the trial court erred by reassigning the income tax dependency exemptions. This Court disagrees.
Paul argues that the court's tax dependency exemption allocation is not in the best interest of the children. Paul points out that the Shared Parenting Plan specifically outlines the income tax dependency exemptions for the parties. The Shared Parenting Plan stated that Paul and Cynthia would each receive an exemption for one child every year and the third child would be alternated between them every year. This arrangement, Paul contends, is in the best interests of the children.
Although Paul notes that the parties determined in the Shared Parenting Plan that they would equally share in the ability to claim the children on their respective income tax returns, he does not argue that it was error for the lower court to change the parties' agreement. Rather, he argues that that arrangement is not in the children's best interests.
A trial court may reconsider which parent should be granted the tax exemption when modifying a child support order. Burns v. May (1999),133 Ohio App.3d 351, 356, citing Hildenbrand v. Hildenbrand (Jan. 12, 1998), Butler App. No. CA97-02-035, unreported. The determination of the tax exemption is directly related to the support of the child; therefore, the trial court's decision must be in the best interest of the child in order to be upheld. Singer v. Dickinson (1992),63 Ohio St.3d 408, 414; and Hurchanik v. Hurchanik (1996),110 Ohio App.3d 628, 630. Furthermore, tax exemptions should be allocated to yield the greatest savings to benefit the children. See Singer,63 Ohio St.3d 408, syllabus. However, before a trial court may modify income tax dependency exemptions, it must find a substantial change in circumstances. Hoban v. Hoban (1990), 64 Ohio App.3d 257, 261.
The parties entered into a Shared Parenting Plan, which was adopted by the trial court in the August 19, 1997 divorce decree. The Shared Parenting Plan states that the parties would share equally in all of the expenses of the children, and that each of the parties would receive an exemption for one child every year, and the third child would be alternated between them each year. The Shared Parenting Plan did not establish child support, but rather, stated that the matter would be determined by the court. Following the entry of divorce, the issue of child support was litigated. The court found that a substantial change in circumstances had occurred since August of 1997. Specifically, Paul's income had increased while Cynthia's had decreased. The court also determined that Cynthia contributed significantly more to the expenses of the children. The court ordered an increase in Paul's child support obligation, and reallocated the tax dependency exemptions, as "[t]he determination of the tax exemption is directly related to the support of the child[.]" Singer, supra, at 414.
Paul has failed to show that the lower court's reallocation of tax dependency exemptions is not in the best interests of the children. This Court finds that the lower court's decision was not arbitrary or unconscionable.
 Sixth Assignment of Error THE TRIAL COURT ERRED BY FAILING TO ALLOW FULL EXAMINATION AND EXPLORATION OF FACTS AND EVIDENCE.
In his sixth assignment of error, Paul claims that the trial court erred by failing to allow a full examination of the witnesses by limiting his cross-examination. This Court disagrees.
Pursuant to Evid. R. 611(A), a trial court "shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence[.]" "Cross-examination shall be permitted on all relevant matters and matters affecting credibility." Evid. R. 611(B). Therefore, the trial court has the discretion to limit the scope of cross-examination. Berlinger v. Mt. Sinai Medical Ctr. (1990),68 Ohio App.3d 830, 838, appeal not allowed (1991), 58 Ohio St.3d 707. As such, an appellate court should be slow to disturb a trial court's determination on the scope of cross-examination unless the trial court has abused its discretion and the party illustrates a material prejudice. Reinoehl v. Trinity Universal Ins. Co. (1998),130 Ohio App.3d 186, 194, appeal not allowed (1999), 84 Ohio St.3d 1505. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619,621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
Paul argues that the trial court erred in limiting his cross-examination. The record reveals that the trial court limited the cross-examination by sustaining various objections made by Cynthia. Specifically, Paul was not allowed to cross-examine Cynthia concerning: (1) the specifics of some of her itemized deductions; (2) the items deposited into her account prior to the divorce decree; (3) the categorization of expenses as "fun stuff"; and (4) the agreement she had with Mr. Coffman concerning their business dealings. From the record, it is apparent that the trial court prohibited inquiries (1), (2), and (3) based on an evidentiary basis, namely, relevancy. See Evid. R. 403. With respect to inquiry (4), the record indicates that the trial judge excluded the question due to a confidentiality issue. This Court concludes that the trial court did not abuse its discretion in limiting Paul's cross-examination on these issues.
 III.
Paul's first, second, third, fourth, fifth, and sixth assignments of error are overruled. The judgment of the common pleas court is affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ____________________________ DONNA J. CARR
BAIRD, P.J., SLABY, J. CONCUR.
[1] Cynthia J. Bender is now known as Cynthia J. Bender-Clarke.
[2] The divorce decree refers to the children as having been born as issue of the marriage, however, the Shared Parenting Plan refers to Paul and Cynthia as the children's adoptive parents.
[3] The trial court, pursuant to Civ.R. 54(B), certified that, although the child support issue remained pending, there was no just reason for delay. Thus, the divorce decree constituted a final appealable order.
[4] Paul has argued in this third assignment of error that Cynthia's income figure is inaccurate because she voluntarily left her job. This Court found, in the first assignment of error, that the lower court did not commit reversible error in making the determination that Cynthia was involuntarily terminated.