OPINION
This case is before us on an appeal and cross-appeal from a judgment and decree of divorce. The parties in this case were married for about fifteen years and have one minor child (William). During the marriage, the husband (Joseph) was in the United States Air Force. Before the divorce was filed, Joseph began receiving military retirement benefits. The proper allocation of those benefits is a major issue in the appeal. Also at issue are the spousal support and child support awards, child care expenses, and educational expenses for the minor child. In discussing these points, we will first address the wife's (Virginia's) appeal, and then we will consider Joseph's cross-appeal. Before we do so, however, we will briefly consider whether the cross-appeal is properly before us.
Virginia contended, in her reply brief, and at oral argument, that Joseph did not file a notice of cross-appeal. Joseph, who is acting prose, did timely file a document entitled "Post Decree Cross Appeal Motion to Modify Final Judgment and Decree of Divorce." He also timely filed a civil docket statement as required by our court. Virginia does not dispute that these documents were filed or that she received them; she simply thinks they were not sufficient to institute a cross-appeal. However, we disagree.
According to the Ohio Supreme Court, the only jurisdictional requirement for a valid appeal is "the timely filing of a notice of appeal." Transamerica Ins. Co. v. Nolan (1995), 72 Ohio St.3d 320, syllabus. When appellate courts are presented with other defects in the notice of appeal, they have discretion to decide if sanctions, including dismissal, are justified. A decision on this issue will not be overturned unless it is an abuse of discretion. Id.
After examining the record, we find that the notice of cross-appeal was timely filed under App.R. 3(A). While the notice might have been better worded, the defect does not merit any sanction, including dismissal. Virginia was not harmed in any way, since she had notice of the appeal and a chance to respond to the alleged errors. We also could have allowed Joseph to amend his notice of appeal if we felt amendment was needed. See App.R. 3(F). However, the notice of cross-appeal was timely, and we can adequately tell from the notice that Joseph intended to appeal from the final judgment of the trial court. Consequently, we will consider the merits of the cross-appeal.
 I
Virginia claims in her first assignment of error that the trial court abused its discretion in dividing Joseph's retirement income. This assignment of error has three sub-parts. In the first sub-part, Virginia contends that the court erred in failing to include a VA waiver as part of Joseph's retirement income. The second issue involves the trial court's alleged error in excluding money deducted from Joseph's retirement check for a Survivor Benefit Plan (SBP). And finally, Virginia says in the third sub-part that the court erred in failing to divide Joseph's military retirement pay as of the date of the divorce hearing (June 13, 2001).
The facts pertinent to these issues are as follows. Joseph's gross yearly retirement income is about $29,712, or $2,474 per month. Of this amount, $2,328 per year, or $194 per month, is deducted as a VA waiver. Specifically, Joseph has a 10% disability, for which he receives a disability check of $194 per month. A corresponding amount is deducted from Joseph's military retirement check, i.e., it is "waived." The effect is that Joseph receives the same amount of money as he would have received without the disability. However, since the disability check is not taxable, Joseph does receive some benefit from the way payment is structured.
An additional $1,948.08 per year, or $162.34 per month, is deducted from Joseph's retirement check to pay for the SBP. This is also a pre-tax deduction. At the time of trial, Virginia was named as the beneficiary of the SBP. Joseph wanted to keep the SBP, to ensure that his son would be taken care of in the event of his death. Joseph also did not object to Virginia remaining as the beneficiary. However, Virginia was given an insurance policy on Joseph's life as a result of the divorce proceedings. Virginia believes this is adequate protection, and she does not want the SBP premium to be deducted from her share of retirement proceeds.
In allocating the military pension, the trial court deducted the VA waiver and the SBP premium. Consequently, the court used a starting figure of $25,435.92, or $2,119.66 per month. The parties stipulated that Virginia's coverture share of Joseph's military retirement was 30.625%. As a result, Virginia's current share of the retirement benefit is about $649 per month, as opposed to about $758, if the SBP and disability amounts had been included.
In connection with the VA waiver, Virginia relies on Hoyt v. Hoyt
(1990), 53 Ohio St.3d 177, and three unreported Ohio cases — Elsassv. Elsass (Dec. 29, 1993), Greene App. Nos. 93-CA-0005, 93-CA-0016, unreported, 1993 WL 541610; Motter v. Motter (July 27, 2000), Wyandot App. No. 16-99-14, unreported, 2000 WL 1049311; and Potter v. Potter
(Nov. 14, 2001), Wayne App. No. 01CA0033, unreported, 2001 WL 1421528.
In Hoyt, the Ohio Supreme Court noted the general rule that pension or retirement benefits earned during marriage are marital assets.53 Ohio St.3d at 178. In a footnote, the court remarked that disability retirement pay is an exception to the general rule. Id. at n. 3. Subsequently, in Elsass, we interpreted this exception to mean that disability payments are not marital property "unless `they are accepted by the retiree in lieu of retirement pay, [in which case] they are marital property to the extent that retirement pay value is included therein.'" 1993 WL 541610, p. 5. Our decision in Elsass was then followed by the Third and Ninth District Courts of Appeals. See Motter,
2000 WL 1049311, p. 3, and Potter, 2001 WL 1421528, pp. 1-2.
 However, these cases do not apply because they did not involve military disability benefits. In fact, disability benefits were not even at issue in Hoyt. Instead, the Ohio Supreme Court simply developed general guidelines for trial courts to follow in considering pension benefits. 53 Ohio St.3d at 178. Further, while the three unreported cases did deal with disability benefits, the retirement plans were civilian. Elsass, 1993 WL 541610, p. 1 (Civil Service Retirement System); Motter, 2000 WL 1049311, p. 2 (U.S. Postal Service retirement), and Potter, 2001 WL 1421528, p. 1 (Ohio Public Employees Retirement System benefits).
In contrast, military retirement pensions are the subject of a specific statute and controlling United States Supreme Court authority, which indicate that when military retirement pay is waived for receipt of veterans' disability benefits, state courts may not treat the waived portion as property that is divisible upon divorce. See Uniformed Services Former Spouses' Protection Act, Section 1408, Title 10 U.S. Code, and Mansell v. Mansell (1989), 490 U.S. 581, 109 S.Ct. 2023,104 L.Ed. 675. In fact, we have previously distinguished Elsass on this specific ground. Kutzke v. Kutzke (April 12, 1996), Greene App. No. 95 CA 66, unreported, 1996 WL 173399, p. 1.
In Kutzke, we applied Mansell and concluded that the trial court erred in awarding the wife a percentage of her husband's military disability retirement. Id. at p. 2. Accord, Konieczny v. Konieczny (March 27, 1998), Clark App. No. 97 CA 83, unreported, 1998 WL 401835, p. 2. Consequently, the trial court in the present case did not abuse its discretion in excluding the disability portion of Joseph's retirement. To the contrary, the court followed established authority in this appellate district, as well as controlling federal law.
Similarly, Section 1408(a)(4)(D), Title 10 U.S. Code, indicates that amounts deducted because of an election to provide an annuity to a former spouse are not to be included in "disposable retired pay." Joseph elected to provide such an annuity, and the trial court excluded the premium ($162.34 per month) from Joseph's disposable pay. Under the statute, once the election was made, the court did not have the option of including the annuity premium in Joseph's disposable income. As a result, the court did not abuse its discretion in excluding the premium.
In the final decree, the court also preserved the election, by ordering Joseph to do nothing to alienate Virginia's interest in her election of the SBP. Technically, the court was incorrect when it said that Virginia elected the SBP. However, we do not think the court abused its discretion in ordering that the election be maintained. Although Virginia did receive a life insurance policy on Joseph's life, she was responsible for paying any premiums due on the policy. Given Virginia's high amount of credit card debt and lack of employment, one could easily visualize a scenario in which Virginia might be forced or might decide to let the insurance policy lapse. In that event, the minor child could be left without support if something happened to Joseph. As a result, we think the trial court acted properly, in the child's best interest.
As we mentioned, Virginia claims that the trial court acted unfairly in making her pay for an election she does not want. The court could have adjusted spousal support to compensate for the premium deduction, but apparently chose not to do so. Compare Blissit v. Blissit (1997),122 Ohio App.3d 727, 733 (Section 1408, Title 10 U.S. Code, limits extent to which government will make payments directly to obligee on retiree's behalf, but military retiree may be ordered or may agree to pay additional spousal support to compensate).
Given the substantial spousal support that Virginia was awarded, plus her receipt of military retirement pay and child support, we are unable to conclude that the trial court abused its discretion in failing to adjust spousal support to accommodate for the excluded SBP premium. We note that Virginia's share of the premium amounted to only about $49 per month, while the total support and retirement awarded was in excess of $2,400 per month.
In arguing that the court abused its discretion, Virginia quotes from our prior decision in Parker v. Parker (Dec. 8, 2000), Montgomery App. No. 18320, unreported, 2000 WL 1803770, which discussed equitable allocation of a SBP. In Parker, we indicated that the equitable approach would be to award the entire benefit to the wife, with the requirement that she pay the entire premium, or award the husband the entire premium and order him to cooperate with his wife in obtaining a life insurance policy in his name. Id. at p. 4. However, the facts in Parker were different from those of the present case. Specifically, the husband inParker paid 80% of the SBP premium. However, because the benefit was not divisible and his former wife was the named beneficiary, the husband would be precluded from naming a current spouse as beneficiary. Under these circumstances, we felt it would be more equitable to award the benefit to one party or another, and then make that party responsible for paying the premium.
In the present case, Joseph does not object to having his former wife as the beneficiary, even though he is paying one-half the premium and will be precluded from naming a future wife as beneficiary. Instead, Virginia is the one who objects, despite the fact that she is only indirectly paying one-half the premium. Admittedly, the additional insurance policy on Joseph's life is probably unnecessary. However, since Virginia has been awarded the policy, she can cancel it and avoid paying an extra premium. In view of the above facts, we cannot find that the trial court acted arbitrarily or unreasonably.
The final issue in this assignment of error is the trial court's alleged error in failing to specify a date upon which distribution of the military retirement should begin. According to Joseph, this was not an error because federal law states that payments will begin no later than ninety days after effective service of a court order on the designated agent for the Air Force. Thus, Virginia would begin to receive her coverture fraction ninety days after the Defense Finance and Accounting Service received the court's August 16, 2001 order, i.e., in November, 2001. In this regard, Joseph relies on Section 63.6(h), Title 32, C.F.R. [which was removed from C.F.R. after the date the decree was filed in this case. See 66 F.R. 53957-53958 (2001)]. Section 63.6 contains procedures for payments to former spouses from retired pay. In pertinent part, Section 63.6(h)(1) provides that:
 Subject to a member's eligibility for retired pay, effective service of a court order, and the limitations and requirements of this part, the Uniformed Service concerned shall begin payments to the former spouse not later than 90 days after the date of effective service.
Although this regulation does say when the government will start paying benefits, it does not prevent courts from dividing marital property as of a certain date. Instead, the federal regulation simply indicates the time frame within which the government will begin payment once it has received a request. Section 63.6(h)(10) goes on to say that "[p]ayments shall be made prospective in terms of the amount stated in the court order. Arrearages will not be considered in determining the amount available from retired pay."
We interpret this as the federal government's recognition that arrearages may exist, due to the date of division specified in a court order and the time lapse before the government begins payment. Nonetheless, the government will not concern itself with paying arrearages. This is logical, since retirement is paid in set monthly amounts and an arrearage could be significant, depending on the delay in forwarding the court order to the federal accounting service. As we stressed earlier, the federal statute (as well as regulations interpreting the statute) do not limit the amount retirees may be ordered to pay or may agree to pay. Instead, they merely limit the "extent to which the government will make such payments directly" to obligees.Blissit, 122 Ohio App.3d at 733.
By the same token, obligors may be held responsible for unpaid amounts which accrue before the government payments begin. Compare Konieczny
(March 27, 1998), Greene App. No. 97 CA 83, unreported, 1998 WL 401835, p. 3 (husband held in contempt and required to pay ex-wife share of six months of retirement pay that she did not receive, due to husband's delay in submitting paperwork to the federal government).
Normally, the final hearing date is presumed to be the termination date of the marriage for purposes of property division, unless the court uses a de facto termination date. See, e.g., R.C. 3105.171(A)(2), andBadovick v. Badovick (1998), 128 Ohio App.3d 18, 31. In the specific context of a military retirement pension, we have held that "absent any contrary agreement of the parties, any division of property must coincide with the decree of divorce terminating the marriage." Berdine v.Berdine (Aug. 15, 1997), Greene App. No. 96-CA-156, 1997 WL 570887, p. 3. In Berdine, the trial court had divided retirement at an earlier time, but we found no prejudice because the Order for Division of Military Retirement identified the date of the final decree as the time for division of the pension. Id.
Because the trial court should have identified the date of division for the pension in the decree, the first assignment of error has merit, in part. Based on Berdine, the trial court judgment will be modified to indicate that the date of property division for the military retirement pay is August 16, 2001 (the date the final judgment and decree of divorce was filed). Accordingly, Joseph will be responsible for paying any amounts which accrued between that date and the date when the federal government began paying Virginia her share of the pension. This matter will be remanded to the trial court for calculation of the precise amount due.
In light of the preceding discussion, the first assignment of error is overruled in part and is sustained in part.
 II
In the second assignment of error, Virginia claims that the trial court abused its discretion by failing to include Joseph's VA disability income in the child support calculation. Effective March 22, 2001, R.C.3119.01(C)(7) defined "gross income" as:
 the total of all earned and unearned income from all sources during a calendar year, whether or not the income is taxable, and includes income from salaries, wages, overtime pay, and bonuses * * * pensions; * * * social security benefits, including retirement, disability, and survivor benefits that are not means-tested; workers' compensation benefits; unemployment insurance benefits; disability insurance benefits; benefits that are not means-tested and that are received by and in the possession of the veteran who is the beneficiary for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration; spousal support actually received; and all other sources of income.
Income excluded as gross income under this statute includes:
 [b]enefits for any service-connected disability under a program or law administered by the United States department of veterans' affairs or veterans' administration that are not means-tested, that have not been distributed to the veteran who is the beneficiary of the benefits, and that are in the possession of the United States department of veterans' affairs or veterans' administration.
R.C. 3119.01(C)(7)(b). Because Joseph's disability income does not meet the statutory requirements for exclusion, it should have been included as "gross income" for purposes of calculating child support.
Joseph concedes that his VA disability income would normally be included in the child support calculation. However, he contends that this income does not qualify because he does not really "receive" it, i.e., the amount of the VA check is deducted from his military pension. While this may be true, it is irrelevant. Specifically, Joseph is not being charged for child support purposes with the full amount of his military pension; he is being charged only with the amount left after deduction of the disability waiver. Adding the disability waiver simply means that Joseph will be charged, for child support purposes, only with the actual amount of income he receives. Contrary to Joseph's belief, no amount is being counted twice. In fact, Joseph benefits from receiving part of his military retirement as disability, since it reduces the taxable amount of the retirement pay.
Accordingly, the second assignment of error has merit and is sustained. This case will be remanded to the trial court so that the amount of the VA disability pension ($2,328 per year) can be included as income to Joseph for purposes of computing child support.
 III
In the third assignment of error, Virginia challenges the trial court's failure to include daycare expense in the Child Support Computation Worksheet. We review such matters for abuse of discretion, i.e., we decide if the trial court's attitude was "`unreasonable, arbitrary, or unconscionable.'" Jackson v. Jackson (2000), 137 Ohio App.3d 782, 799. "Decisions are unreasonable if they are unsupported by a sound reasoning process." Id. (citation omitted).
After reviewing the record, we agree with the trial court's reasoning process. In this regard, the court found that daycare expenses would belong to Virginia so long as she remained unemployed. Based on the testimony, the court could easily have concluded that Virginia's doctor appointments and job searches could be conducted while the parties' son was in school. To the extent that Virginia chose to keep her son in daycare after the school day was over, it was voluntary, for her own benefit, and was not a necessity. Therefore, Virginia is properly chargeable with the expense.
Accordingly, the third assignment of error has no merit and is overruled.
 IV
The fourth assignment of error is based on the trial court's decision not to require Joseph to pay for tutoring at the Sylvan Learning Center. In this regard, the court stated that Virginia should pay the entire amount of the expense if she decided to continue with tutoring. The court also said that the matter could later be added as a deviation to child support, if appropriate.
According to the evidence, the expense for Sylvan tutoring was about $340 per month. The parties disputed how beneficial the tutoring was. Additionally, Joseph testified that he could not afford to pay for tutoring along with the other support obligations. Virginia clearly was not in a financial position to afford the tutoring, since she lost her job in February, 2001, and also had numerous debts.
Under the circumstances, we think the trial court acted reasonably in refusing to order Joseph to pay extra tutoring expenses. Although the parties had substantial income before the divorce, that was not true afterwards, as is so often the case. Further, the court appropriately allowed for a post-decree change, based on changed circumstances and the best interests of the child.
Based on the preceding discussion, the fourth assignment of error is overruled.
 V
In the fifth assignment of error, Virginia claims the trial court abused its discretion in awarding only $1,100 per month in spousal support. Primarily, Virginia relies on what she thinks is an inappropriate disparity in income, in that Joseph has, under the trial court's figures, about $53,984 for his own support, while Virginia has only about $38,442 to support herself and her minor child. Virginia points out that she needs an additional $600 or $700 per month to meet her expenses and to make the parties' incomes essentially equal.
Similarly, in his fifth cross-assignment of error, Joseph contends that the trial court abused its discretion in awarding spousal support because the award was unreasonably high. In this regard, Joseph claims that Virginia had an established and successful career before and after their marriage, and worked with her current physical disability for a year before she was laid off from her job. Before being laid off, Virginia was employed in the computer field (where she worked steadily for many years), and her income and Joseph's were substantially the same.
Because both the assignment and cross-assignment of error deal with the same topic, we will consider them together. As a preliminary point, we note that there is no requirement after divorce for respective household incomes to be equal. Tremaine v. Tremaine (1996), 111 Ohio App.3d 703,707, and Kaechele v. Kaechele (1988), 35 Ohio St.3d 93, 95. In determining the amount of spousal support, the trial court considered the appropriate statutory factors in R.C. 3105.18(C) such as duration of marriage, relative earning abilities, relative education, and so forth. After considering these factors, the court found that an award of $1,100 per month for seven years was appropriate.
At trial, Virginia presented her original affidavit of income and expenses (without supporting documentation), in which she claimed to have total monthly expenses of about $4,754. Some expenses listed on the original exhibit were crossed out and other amounts were inserted in ink. For example, an expense of $180 per month for housecleaning was deleted and cell phone charges were reduced from $90 to $60. We cannot tell from Virginia's testimony and the exhibit what her precise monthly expenses were after the changes, although they appear to be more than $3,000. We note that the affidavit contains some questionable expenses like $535 per month for house repairs, $100 per month for yard services, and $100 per month for "music." In addition, $404 per month for child care was listed, even though the trial court impliedly found (and we agree) that child care was not needed.
Virginia did testify that at the time of the hearing, she was receiving a total of about $2,807 per month in unemployment, child support, and temporary spousal support. At that time, she said she was "scraping by," and was behind on a few bills. Of the listed income, about $1,506 per month was due to unemployment compensation. Based on the trial court's award of about $2,400 in child support, spousal support, and the military retirement pay, Virginia will have a gross monthly income of about $3,906, or $46,872 per year (including unemployment). Under the circumstances, the trial court did not abuse its discretion by awarding an amount of support that was too low.
Likewise, we do not feel the award was unreasonably high. At trial, Joseph claimed to be on the verge of "bankruptcy." However, his gross income per month, including employment and pension, and after deduction of court ordered support, is about $4,494. The expenses listed on his affidavit of income and expenses amount to about $2,400.
In deciding an appropriate amount of spousal support, trial courts do not have to accept a party's estimate of expenses, particularly where supporting documents are not provided. Based on the testimony of both parties, some of which might have been viewed with skepticism, the trial court awarded an appropriate amount of spousal support. Accordingly, both the fifth assignment of error and the fifth cross-assignment of error are overruled.
 VI
Virginia's sixth assignment of error contests the trial court's decision to award Joseph the tax dependency exemption every year.
Effective March 22, 2001, R.C. 3119.82 requires trial courts to designate which parent may claim a child as a dependent for federal income purposes. If the parties do not agree, the statute provides that the court may allow the non-residential parent to claim the children as dependents "only if the court determines that this furthers the best interest of the children." The statute goes on to say that:
 [i]n cases in which the parties do not agree which parent may claim the children as dependents, the court shall consider, in making its determination, any net tax savings, the relative financial circumstances and needs of the parents and children, the amount of time the children spend with each parent, the eligibility of either or both parents for the federal earned income tax credit or other state or federal tax credit, and any other relevant factor concerning the best interest of the children.
Essentially, R.C. 3119.82 codifies the test in Singer v. Dickinson
(1992), 63 Ohio St.3d 408, paragraph three of the syllabus. For many years, this test has been used to evaluate the propriety of awarding tax exemptions to a non-custodial parent. However, the new statute adds two factors not specifically mentioned in Singer, i.e., the amount of time the child spends with each parent, and the eligibility of either parent for the federal earned income tax credit or other state or federal tax credit.
We have previously upheld a trial court's award where we were able to tell from the financial data in the record that the child's best interests would be served by giving the non-custodial parent the tax exemption. Banning v. Banning (June 28, 1996), Greene App. No. 95 CA 79, unreported, 1996 WL 354930, pp. 14-15. Other courts have taken a less liberal approach. Compare, Corple v. Corple (1997), 123 Ohio App.3d 31,34-35. Nonetheless, even if we apply Banning, the record in the present case does not allow us to make a finding. Joseph's taxable income is higher, but we are not certain (nor is it our duty to ascertain) if this automatically means that Joseph is in a higher tax bracket. Additionally, Virginia would have taxable interest to deduct based on home loans and personal property taxes, while Joseph does not. Therefore, the overall potential tax effect for either party is unclear. The record also does not contain information which would allow us to tell if either party may be eligible for various state and federal tax credits. Again, resolving these issues is not our function.
Moreover, as we mentioned, the new statute adds to the traditional test. Consequently, due to these additions, and the lack of evidence in the record, we will remand the case to allow the trial court to explain its basis for awarding Joseph the tax exemption. We stress that the court's present decision may, in fact, be in the child's best interests. However, we simply do not have enough evidence to make that determination.
In view of the above discussion, the sixth assignment of error is sustained.
 VII
Having resolved the assignments of error, we will now discuss the cross-assignments of error. In the first cross-assignment of error, Joseph claims that the trial court erred in its computation of child support by entering the incorrect amount of court ordered support on Column 1, line 10 of the Child Support Computation Worksheet, Adjustments to Income. Specifically, Joseph claims the entered amount ($12,949.34) does not match the actual spousal support award of $13,464 ($1,100 per month plus 2% poundage). Virginia agrees that the entered amount is wrong, but says that poundage should not be included. In this regard, Virginia relies on R.C. 3119.01(C)(7), which includes within the definition of gross income various items, including "spousal support actually received."
We might accept Virginia's argument if the spousal support were being received by Joseph as gross income. However, in this instance, the spousal support is an adjustment to, or deduction from, Joseph's gross income. Therefore, the definition of gross income in R.C. 3119.01 is irrelevant. On the other hand, R.C. 3119.022, line 10, provides for deduction of "court-ordered spousal support paid to any spouse." Since poundage is not paid to a spouse or former spouse, we do not think it should be included within the adjustments to gross income. If the legislature felt poundage should be included as an adjustment, it could have said so.
Accordingly, the amount that should be reflected on line 10 of the worksheet is $13,200, which is the amount of spousal support paid to Virginia. Accordingly, the first cross-assignment of error is sustained in part, and this matter will be reversed and remanded for correction of the worksheet.
 VIII
In the second cross-assignment of error, Joseph contends that trial court erred by charging Joseph with Virginia's coverture fraction of retirement benefits. Virginia agrees that the trial court erred in this regard. Consequently, the second cross-assignment of error is sustained. This case will be remanded to the trial court with instructions to charge each party on the Child Support Computation Worksheet with the appropriate share of retirement income (about $17,646 for Joseph and $7,789 for Virginia).
 IX
Joseph's third cross-assignment of error relates to court orders about removal of a piano from Virginia's home. In this regard, Joseph complains because the court ordered him to remove his father's piano from the house. Joseph contends that the piano is not his property and he lacks legal standing to remove it. We disagree with Joseph.
During the divorce hearing, the parties placed certain agreements in the record. One such agreement dealt with the piano. The parties noted that the piano belonged to Joseph's father. They then agreed that Joseph would have thirty days to remove the piano and that Joseph would choose and pay for the moving company. While Joseph claims certain events transpired, including the fact that he was "pressured" minutes before the hearing into agreeing to move the piano, the matters being raised are not in the record and cannot be considered on appeal. See, e.g., Doctor v.Doctor (Feb. 4, 2000), Greene App. No. 99-CA-51, unreported, 2000 WL 125938, p. 2.
Based on the preceding discussion, the third cross-assignment of error is without merit and is overruled.
 X
In the fourth cross-assignment of error, Joseph argues that the trial court erred in requiring him to provide dependent health care coverage through his employer's insurance company (CIGNA). The final decree obligates Joseph to provide dependent group health insurance if available at a reasonable price, pursuant to the dependent health care order filed with the decree. The dependent health care order which was filed with the decree then designates CIGNA HMO as the appropriate health care provider.
Joseph claims this is error because R.C. 3113.217 (which requires dependent health care orders) was repealed before the date of the hearing. Joseph also claims that he wants to provide insurance through the TRICARE program, which offers more coverage for less cost.
As a preliminary point, we agree that R.C. 3113.217 was repealed. However, R.C. 3113.90 was enacted shortly before the hearing. The new statute contains similar provisions, and indicates that the court shall issue an order requiring an obligor under a child support order to obtain health insurance coverage, if available at a reasonable cost through the obligor's employer or though any other group policy or plan available to the obligor. Thus, the trial court had the duty to file a dependent health care order.
Furthermore, Joseph waived any error in this regard. At the hearing, Virginia's attorney discussed certain items on the record, including the fact that Joseph would continue to maintain health care coverage. However, the attorney also said he was not sure if coverage would be through Joseph's employer or through TRICARE. He then stated that the parties would have to address the coverage which would be used. Following these remarks, Joseph's attorney discussed specific items of agreement and disagreement, but did not mention health care. Health care coverage was also not discussed during the testimony. From the record, we cannot tell the source of the information on the dependent care order. If Joseph wanted to designate a specific health care provider, he or his attorney should have informed the court. Since this error could easily have been avoided or corrected, but was not raised in the trial court, we conclude that it was waived. See, e.g., Phillips v. Dayton Power LightCo. (1996), 111 Ohio App.3d 433, 450.
We do note that the parties filed a stipulated supplement to the divorce decree, dealing with access to school records. If this issue is important, we see no reason why a similar stipulation could not be filed concerning dependent health care.
In light of the preceding discussion, the fourth cross-assignment of error is overruled.
 XI
The fifth cross-assignment of error has already been addressed and overruled. In the sixth cross-assignment of error, Joseph raises the issue of voluntary unemployment. Specifically, Joseph says the trial court should have imputed at least a minimum wage income to Virginia because Virginia was employed steadily both before and after marriage in a well-paying field and had never previously had trouble finding employment, despite the family's frequent moves.
In its decision, the trial court found no credible evidence that Virginia was voluntarily underemployed. However, the court did say that Virginia's income would be based on her unemployment compensation in the annual amount of $9,542, and this was the figure used on the Child Support Computation Worksheet.
Under R.C. 3119.01(C)(11), potential income includes imputed income of a parent who is determined by the court to be voluntarily unemployed. In this context, the Ohio Supreme Court has held that whether a parent is "voluntarily underemployed" and the amount of potential income to be imputed are factual questions for the trial court. Rock v. Cabral
(1993), 67 Ohio St.3d 108, syllabus. We are not allowed to disturb the trial court's findings absent an abuse of discretion. Id.
Although we may have decided the issue differently, we cannot find that the trial court acted arbitrarily in refusing to find that Virginia was voluntarily unemployed. While the documentation of Virginia's back injury was exceedingly sparse, and her job search was also not well-documented, the trial court was in a better position than we are to weigh the credibility of the witnesses.
However, in reviewing this matter, we did notice an error on the trial court's part regarding the amount of Virginia's annual unemployment income. According to Virginia's testimony and the document she submitted (Ex. D, the stub for her unemployment checks), Virginia was paid unemployment bi-weekly. The weekly benefit amount was $367, and the bi-weekly amount was $734. However, the figure the trial court used for Virginia's annual amount of unemployment compensation ($9,542) is only equal to 26 times $367. In contrast, the correct annual amount of unemployment compensation would be 26 times the bi-weekly benefit amount ($734), or $19,084. Since this matter is being remanded for recalculation of the correct amount of child support, the trial court should correct the error when it re-computes child support.
Based on the preceding discussion, the sixth cross-assignment of error is overruled, with the provision that on remand, the trial court will correct its error concerning Virginia's annual income from unemployment compensation.
 XI
Both the seventh and eighth cross-assignments of error deal with attorney fees, and will be considered together. In the seventh cross-assignment of error, Joseph challenges the trial court's award of reasonable attorney fees to Virginia. Joseph then contends in the eighth cross-assignment of error that the trial court should have given him attorney fees.
Under R.C. 3105.18(H), the trial court may award reasonable attorney fees to either side at any stage of the proceedings, if it decides the other party has the ability to pay the fees. The statute also provides that:
 [w]hen the court determines whether to award reasonable attorney's fees to any party pursuant to this division, it shall determine whether either party will be prevented from fully litigating that party's rights and adequately protecting that party's interests if it does not award reasonable attorney's fees.
Our review of attorney fee awards is limited to deciding if: "(1) the factual considerations upon which the award was based are supported by the manifest weight of the evidence, or (2) the domestic relations court abused its discretion." Oatey v. Oatey (1992), 83 Ohio App.3d 251, 263
(citations omitted).
In the present case, the only factual finding the trial court made was that Joseph had the ability to pay an award. The court did not make any finding concerning whether Virginia would be precluded from litigating her rights and adequately protecting her interests absent a fee award. Additionally, the record lacks any evidence of the reasonableness and necessity of fees. In the absence of similar information, the Eighth District found in Oatey that the award of fees was an abuse of discretion. Id. at 263-64. Likewise, we have said that the party asking for fees has the burden to prove that expenses were actually incurred and were reasonable and necessary. Donese v. Donese (Sept. 29, 2000), Greene App. No. 2000-CA-17, unreported, 2000 WL 1433872, p. 4. We have inferred such information at times from the record. However, this approach is not appropriate in the present case.
Specifically, the trial court could not have made an award for fees incurred before the divorce hearing, since no pending motion for attorney fees existed prior to the hearing. We have previously held that fee awards are prospective only, and cannot be awarded for time periods that precede the filing of the motion. Seagraves v. Seagraves (1997),125 Ohio App.3d 98, 102. The reason for this is that a party must be put on notice of the possibility of an award. Then, "once notice of the intent to seek attorney fees is given, the party against whom the motion is made acts at his own risk if he continues to engage in protracted litigation." Id.
According to the record in this case, Virginia did file a motion for attorney fees, child support, spousal support, and other temporary orders, on November 13, 2000. Following that request, the trial court entered a temporary order for child support on December 12, 2000. However, the trial court did not award either attorney fees or spousal support. Subsequently, Virginia filed a motion on December 27, 2000, asking for a hearing pursuant to Civ.R. 75(M) [now Civ.R. 75 (N)]. Although a hearing was set for January 23, 2001, no entry was filed modifying any of the obligations previously established. At the final hearing, the parties did refer to an agreement that was "read into the record," but was never filed. A written entry reflecting this agreement was submitted as an exhibit at the divorce hearing. The entry covered spousal support, child support, mortgage payments, debt payments, educational and health care expenses for the minor child, and income tax obligations. However, it did not provide for Joseph's payment of any attorney fees. Consequently, Joseph could reasonably have concluded that the attorney fee issue had been resolved. Compare Drumm v. Drumm (March 26, 1999), Montgomery App. Nos. 16631, 17115, unreported, 1999 WL 198120, p. 15 (trial court found in temporary orders that wife needed assistance with legal fees, awarded $1,000, and plainly intended to make further awards as additional fees were incurred until case was resolved. Therefore, attorney fees were allowed to be considered from time motion for temporary order was filed, but not retroactive to date complaint was filed).
After the January 23, 2001 hearing, no further motions for attorney fees were filed. Attorney fees were next mentioned at the time of the final hearing, on June 13, 2001, when Virginia's attorney stated that a request for attorney fees was being made. As we mentioned, following the hearing, the court awarded $1,500 in attorney fees, based solely on Joseph's ability to pay, and without hearing any evidence as to fees. Since the trial court could not award retroactive fees, and did not make proper findings, the seventh cross-assignment of error is sustained.
In Seagraves, we stressed that our decision did not mean that attorney fees were improper. We also remanded the case to the trial court for a determination of the amount of fees and expenses incurred after the motion was filed. Id. We make the same observation and follow the same procedure here. Consequently, this case will be remanded to the trial court for consideration of a proper fee award, if any.
As we noted, Joseph claims in his eight cross-assignment of error that he should have been awarded attorney fees. We find no abuse of discretion in this regard, as Joseph did not ask for fees. In fact, he testified at the hearing that he was not requesting attorney fees from Virginia. Because Joseph did not raise the issue of fees in the trial court, he has waived the matter. Phillips, 111 Ohio App.3d 433, 450.
 X
Joseph's final cross-assignment of error is based on a temporary award of spousal support that was read into the record, but was never formally filed. As we previously noted, the parties apparently entered an agreement about various matters into the trial court record on January 23, 2001. However, no transcript of that hearing has been filed with our court. Joseph claims that $717 in temporary spousal support was ordered, with the understanding that it was actually an early award of Virginia's coverture fraction of the military retirement. In this regard, Joseph claims that he was forced to pay spousal support even though Virginia did not meet the statutory criteria. Consequently, Joseph seeks a refund or credit of the spousal support.
Upon consideration of the record, we disagree that Joseph was forced to pay temporary spousal support. As we mentioned earlier, the agreed entry (which resolved temporary support issues, etc.) was discussed at the final divorce hearing. Although the entry was never filed, Joseph identified an exhibit as the agreement that was read into the record. Joseph then testified that he disputed only one paragraph in the entry, i.e., ¶ 23, which dealt with payment to Sylvan Learning Center. Again, because Joseph could have raised the spousal support issue in the trial court, but failed to do so, we will not consider it on appeal. As a result, the ninth cross-assignment of error is without merit and is overruled.
Based on the preceding discussion, the assignments and cross-assignments of error are resolved as follows:
1) The first assignment of error is sustained in part and overruled in part. The trial court judgment is modified to indicate that the date of property division for the military retirement pay is August 16, 2001. This matter is remanded to the trial court for calculation of the amount due, if any, between that date and the date when the federal government began paying Virginia her share of military retirement. In all other respects, the first assignment of error is overruled.
2) The second assignment of error is sustained. This case is remanded to the trial court so that the amount of the VA disability pension ($2,328 per year) can be included as income to Joseph for purposes of computing child support.
3) The third, fourth, and fifth assignments of error are overruled.
4) The sixth assignment of error is sustained. This case is remanded to the trial court for an appropriate explanation regarding the award of the tax exemption for the minor child.
5) The first cross-assignment of error is sustained in part. This matter is remanded for correction of line 10 of the Child Support Computation Worksheet to reflect $13,200 in spousal support paid to Virginia.
6) The second cross-assignment of error is sustained. This case is remanded so that the trial court can charge each party the appropriate share of retirement income on the Child Support Computation Worksheet (about $17,646 for Joseph and $7,789 for Virginia).
7) The third, fourth, and fifth cross-assignments of error are overruled.
8) The sixth cross-assignment of error is overruled, with the provision that on remand, the trial court will correct its error on line 4 of the Child Support Computation Worksheet concerning Virginia's annual income from employment compensation.
9) The seventh cross-assignment of error is sustained. This case is remanded for a hearing on the amount of attorney fees, if any, that should be awarded to Virginia.
10) The eighth and ninth cross-assignments of error are overruled.
Accordingly, the judgment is affirmed in part, reversed in part, modified in part, and remanded for further proceedings consistent with this opinion.
WOLFF, P.J., concurs.